Linda Alexander OWENS

v.

James Emery OWENS.

Court of Appeals of Tennessee,
at Nashville.

May 24, 2006 Session.

March 29, 2007.

Opinion Denying Petition for Rehearing
April 19, 2007.

Permission to Appeal Denied by
Supreme Court Sept. 17, 2007.

Robert A. Anderson, Nashville, Tennessee, for the appellant, Linda Alexander Owens.

Roger A. Maness, Clarksville, Tennessee, for the appellee, James Emery Owens.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

This appeal involves the financial aspects of the dissolution of a marriage that lasted approximately twenty-five years. Both parties sought a divorce in the Circuit Court for Davidson County. Following a bench trial, the trial court declared the parties divorced, divided the parties' marital estate, and awarded the wife rehabilitative alimony for six years. On this appeal, the wife takes issue with the trial court's valuation and division of the marital estate and with the amount and duration of the spousal support award. She also takes issue with the trial court's refusal to award her attorney's fees and discretionary costs. We have determined that the evidence does not support the trial court's valuation of one marital property interest and that a more equitable division of the marital estate is required. We have also determined that the amount and length of the wife's spousal support should be increased. Finally, we have determined that the trial court erred by denying the wife's request for payment of her attorney's fees but did not err by declining to award her discretionary costs.

## I.

James Emery Owens and Linda Alexander Owens married in 1977. Mr. Owens was twenty-seven years old and had not been married before. Ms. Owens was twenty-eight years old. She had been married before and had custody of her daughter from her prior marriage. The parties also had two children of their own. All the children attained majority before this case was brought to trial.

Mr. Owens had served in the United States Army and had completed one year of college. Throughout most of the marriage, he was employed as a real estate broker and investor. Ms. Owens had a teaching certificate and worked as a substitute teacher during the early years of the marriage. She eventually stopped working to devote her efforts to homemaking. The parties enjoyed an affluent standard of living during the marriage. Their children attended private elementary and secondary schools, and each of them was enrolled in a private college at the time of trial.

In March 2003, Ms. Owens filed a petition for divorce in the Circuit Court for Davidson County. She alleged inappropriate marital conduct and irreconcilable differences. Mr. Owens responded with the counterclaim for divorce on the same grounds. Prior to trial, Mr. Owens agreed to pay Ms. Owens approximately $6,000 per month for living expenses, $150 per month for her car payment, and $1,500 per month for discretionary expenses.

The parties disagreed over the classification and valuation of their assets. Ms. Owens offered to share the costs of retaining experts to value the assets, but Mr. Owens declined the offer. After a prolonged and contentious discovery period, the case was tried on September 28 and October 18, 2004. The parties' disagreements centered on (1) the classification of Mr. Owens's IRA and a house in Boca Raton, (2) the value of the Boca Raton house, the marital home, a partnership to own and manage rental property, and Mr. Owens's real estate business, and (3) Ms. Owens's need for spousal support and Mr. Owens's ability to pay support. In its memorandum opinion filed on November 18, 2004, the trial court declared the parties divorced, allocated the marital property and debt, and directed Mr. Owens to pay Ms. Owens $2,500 per month for three years and then $1,500 per month for three additional years.

Ms. Owens requested an order requiring Mr. Owens to pay $40,251.71 in discretionary costs and also filed a Tenn. R. Civ. P. 59.04 motion seeking an increase in the

spousal support and an additional award for her legal expenses. The trial court denied both motions, and Ms. Owens appealed.

## II.

### The Classification and Valuation of the Marital Property

Ms. Owens insists that the trial court erred in its valuation of the Boca Raton house, the marital home, and Mr. Owens's interest in his realty business. For his part, Mr. Owens asserts that the trial court erred by classifying the Boca Raton house as marital property. We have determined that the evidence does not preponderate against the manner in which the trial court classified each of these properties but that the evidence does not support the trial court's valuation of the Boca Raton house.

### A.

### The Applicable Legal Standards

■ Dividing a marital estate necessarily begins with the systematic identification of all of the parties' property interests. 19 W. Walton Garrett, *Tennessee Practice: Tennessee Divorce, Alimony and Child Custody* § 15:2, at 321 (rev. ed. 2004) (Tennessee Divorce). The second step is to classify each of these property interests as either separate or marital property. *Flannary v. Flannary,* 121 S.W.3d 647, 650 (Tenn.2003); *Conley v. Conley,* 181 S.W.3d 692, 700 (Tenn.Ct.App. 2005); *Anderton v. Anderton,* 988 S.W.2d 675, 679 (Tenn.Ct.App.1998). Tennessee is a "dual property" state. *Smith v. Smith,* 93 S.W.3d 871, 875–76 (Tenn.Ct.App.2002). Accordingly, property cannot be included in the marital estate unless it fits within the definition of "marital property" in Tenn.Code Ann. § 36–4–121(b)(1)(A) (2005). By the same token, "separate

property," as defined in Tenn.Code Ann. § 36–4–121(b)(2), should not be included in the marital estate.

■ Questions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual. *Current v. Current,* No. M2004–02678–COA–R3– CV, 2006 WL 656791, at *1 (Tenn.Ct.App. Mar.15, 2006) (No Tenn. R.App. P. 11 application filed); *Bilyeu v. Bilyeu,* 196 S.W.3d 131, 135 (Tenn.Ct.App., 2005), *perm. app. denied* (Tenn. June 12, 2006); Tennessee Divorce § 15:3, at 324. Accordingly, the appellate courts review a trial court's decisions classifying property using the familiar standard of review in Tenn. R.App. P. 13(d).

■ As a general rule, assets acquired by either spouse during the marriage are presumed to be marital property. Tenn.Code Ann. § 36–4–121(b)(1)(A); *Church v. Church,* No. M2004–02702– COA–R3–CV, 2006 WL 2168271, at *7 (Tenn.Ct.App.Aug.1, 2006) (No Tenn. R.App. P. 11 application filed); *Hunter v. Hunter,* No. M2002–02560–COA–R3–CV, 2005 WL 1469465, at *4 (Tenn.Ct.App. June 21, 2005) (No Tenn. R.App. P. 11 application filed); Tennessee Divorce § 15:4, at 333, and, similarly, assets acquired by either spouse prior to the marriage are presumed to be separate property. Tenn.Code Ann. § 36–4–121(b)(2)(A). Thus, the classification of all assets acquired by either spouse during the marriage begins with the presumption that the asset is marital. *Fox v. Fox,* No. M2004– 02616–COA–R3–CV, 2006 WL 2535407, at *4 (Tenn.Ct.App. Sept.1, 2006) (No Tenn. R.App. P. 11 application filed). A party asserting that an asset acquired during the marriage is separate property has the burden of proving by a preponderance of the

evidence that the asset is separate property. *Goulet v. Heede,* No. E2000–02535–COA–R3–CV, 2002 WL 126279, at *5 (Tenn.Ct.App.Jan.31, 2002) (No Tenn. R.App. P. 11 application filed); *Dunlap v. Dunlap,* 996 S.W.2d 803, 814 (Tenn.Ct. App.1998). The types of evidence that will be sufficient to rebut the presumption that an asset acquired during the marriage is marital property are found in Tenn.Code Ann. § 36–4–121(b)(2)(B)–(F).

■ After a trial court has classified the parties' property as either marital or separate, it should place a reasonable value on each piece of property subject to division. *Davidson v. Davidson,* No. M2003–01839–COA–R3–CV, 2005 WL 2860270, at * 2 (Tenn.Ct.App. Oct.31, 2005) (No Tenn. R.App. P. 11 application filed). *Edmisten v. Edmisten,* No. M2001–00081–COA–R3–CV, 2003 WL 21077990, at *11 (Tenn.Ct.App. May 13, 2003) (No Tenn. R.App. P. 11 application filed). The parties themselves must come forward with competent valuation evidence. *Kinard v. Kinard,* 986 S.W.2d 220, 231 (Tenn.Ct.App. 1998); *Wallace v. Wallace,* 733 S.W.2d 102, 107 (Tenn.Ct.App.1987). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence. *Watters v. Watters,* 959 S.W.2d 585, 589 (Tenn.Ct. App.1997); *Brock v. Brock,* 941 S.W.2d 896, 902 (Tenn.Ct.App.1996). Decisions regarding the value of marital property are questions of fact. *Kinard v. Kinard,* 986 S.W.2d at 231. Accordingly, they are entitled to great weight on appeal and will not be second-guessed unless they are not supported by a preponderance of the evidence. *Smith v. Smith,* 93 S.W.3d at 875; *Ray v. Ray,* 916 S.W.2d 469, 470 (Tenn.Ct. App.1995).

## B.

### The Classification of the Boca Raton House

We turn first to the trial court's decision to classify Mr. Owens's interest in the Boca Raton house as marital property. Even though he concedes that he paid $150 per month in marital funds to help pay the mortgage on the house, Mr. Owens insists that classifying the house as marital property was error because his parents also paid a portion of the mortgage and because the title to the property was partly in his brother's name.

Mr. Owens's parents purchased the house in Boca Raton when they moved there from Memphis. Mr. Owens and his brother loaned his parents the earnest money, and his brother later assumed the mortgage. Mr. Owens's earnest money loan was paid off when his parents sold their home in Memphis. Eventually, Mr. Owens's brother quitclaimed him one-half interest in the property. Thereafter, the two brothers granted their parents a life estate in the property. Mr. Owens's father died in 2000, but at the time of trial, Mr. Owens's mother was still residing in the house. For approximately twenty years, Mr. Owens used marital funds to pay $150 per month to help defray the mortgage expenses.

■ The evidence does not support Mr. Owens's contention that his interest in the Boca Raton house is separate property because it was a gift from his parents. It is essentially undisputed that Mr. Owens is an owner of record of the property and that, for twenty years, he used marital funds to pay the mortgage on the property. This evidence is sufficient to support the trial court's decision to classify Mr. Owens's interest in the Boca Raton house as marital property.

## C.

### The Valuation of the Marital Property

Ms. Owens takes issue with the trial court's valuation of the Boca Raton house, the marital home, and Mr. Owens's interest in his realty company. She asserts that the trial court's decisions regarding the value of each of these interests are not supported by the evidence. We agree with Ms. Owens, but only with regard to the value of the Boca Raton house.

### The Boca Raton House

■ At the time of the divorce hearing, Mr. Owens and his brother were co-owners of record of the Boca Raton house where their mother lived. Their interest was subject to a life estate they had granted to their mother. The market value of the house was $200,000; however, there was a mortgage of between $6,000 and $9,000 on the house.[1] Mr. Owens testified that he had used $36,000 in marital funds to help pay the mortgage on the house. While Ms. Owens insisted that the value of Mr. Owens's interest in the house should be $97,000,[2] the trial court determined that his interest should be valued at $20,000.

■ We have determined that the trial court erred in placing a value on Mr. Owens's interest in the Boca Raton house. The value placed on marital property should, as near as possible, reflect the value of the property on the date that it is divided. Tenn.Code Ann. § 36–4–121(b)(1)(A); *Manis v. Manis*, 49 S.W.3d 295, 303 (Tenn.Ct.App.2001). Therefore, rather than speculating about the value of the Boca Raton house without the life estate, the parties should have provided the court with evidence of present value using the methodology in Tenn.Code Ann. § 67–8–310 (2006) or some other similar methodology. By failing to present evidence of this sort, the parties left the trial court to guess about the property's current value.

■ The trial court based its guess on the payments Mr. Owens made over twenty years to help pay down the mortgage on the house. This approach failed to take into consideration the appreciation in the house during that time. Accordingly, the court should have based its calculation of the value of the house on its fair market value at the time of the divorce. Without taking the value of the life estate into consideration, the value of Mr. Owens's interest in the house at the time of the divorce is $100,000. Mr. Owens's mother's life estate had value, and it would have been appropriate to consider it had either party presented admissible evidence. Neither the trial court nor this court can speculate about what this evidence would have been. Thus, in the absence of evidence regarding the value of the life estate, the trial court should have valued Mr. Owens's share of the Boca Raton house at $97,000.[3]

---

1. There is evidently some dispute about the outstanding mortgage. Ms. Owens's proposed division of marital assets sets the outstanding mortgage amount at $6,000. Mr. Owens testified that approximately $7,000 remained, while his brother testified the amount was closer to $9,000. No bank documents concerning the mortgage appear in the record.

2. $100,000 [value of Mr. Owens's interest]- $3,000 [½ of the mortgage balance] = $97,000.

3. Ms. Owens has requested this court to consider post-judgment facts regarding the death of Mr. Owens's mother, the current state of the title to the Boca Raton house, and the property's value. While the death of Mr. Owens's mother and the current state of the title may be capable of ready demonstration, we decline to consider the valuation of the Boca Raton house in 2007 because this appeal involves a divorce decree that was handed down in 2004.

### The Marital Home

Ms. Owens also asserts that the trial court erred in its valuation of the parties' marital home. She insists that valuing the home at $345,000 is too high and that the methodology of Mr. Owens's appraiser was flawed. We have determined that the value the trial court placed on the marital home was within the range of the valuation evidence presented by the parties.

Mr. Owens presented three opinions regarding the value of the marital home. He himself testified that the value of the home was $400,000. He also presented an appraiser who testified that the house was worth $385,000. Finally, he presented a realtor who stated that the house was worth between $400,000 and $425,000 after undertaking the repairs that would be required to remedy the problems caused by deferred maintenance. Ms. Owens presented an appraiser who valued the house at $305,000. Based on this evidence, the trial court determined that the house should be valued at $345,000.

On this appeal, Ms. Owens takes aim at the methodology of Mr. Owens's appraiser. She challenges the manner in which he valued the pool house and his decision to treat the home as having an "effective age" of ten years rather than the fifteen to twenty years used by her expert. According to Ms. Owens, these flaws in Mr. Owens's expert's approach to valuing the property are so serious that the trial court should have disregarded the expert's opinion in its entirety.

We decline to dismiss Mr. Owens's appraiser's testimony out of hand. Ms. Owens did not object to the appraiser's quali-

fications to render an expert valuation opinion and, in fact, specifically waived her opportunity to voir dire him. While she did not object to the appraiser's opinions when he offered them on direct examination, she cross-examined him regarding his methodology and his conclusions.[4]

When the methodology or factual basis for an expert's opinion is patently flawed, the courts can and should discount the opinion. *Clement v. Clement*, No. W2003–02388–COA–R3–CV, 2004 WL 3396472, at *9–10 (Tenn.Ct.App. Dec.30, 2004), *perm app. denied*, (Tenn. June 27 & Aug. 29, 2005). We have reviewed the testimony of Mr. Owens's appraiser in its entirety, particularly his testimony regarding the application of the American National Standards Institute (ANSI) guidelines, and we have determined that there is no basis to completely discount his opinion regarding the value of the parties' marital home.

The opinion of Mr. Owens's appraiser was not the only testimony the trial court received regarding the value of the parties' marital home. The trial court also received the testimony of Mr. Owens himself, a realtor who testified on behalf of Mr. Owens, and an appraiser employed by Ms. Owens. Based on this testimony, the value of the parties' marital home at the time of the divorce was somewhere between $305,000 and $425,000. The trial court valued the house at $345,000. This record provides us with no basis to second-guess the trial court's valuation decision.

### Mr. Owens's Interest in Prudential Woodmont Realty

Ms. Owens also argues that the trial court erred by valuing Mr. Owens's

---

4. In response to the court's proffer of the witness for voir dire, Ms. Owens's lawyer replied, "No, Your Honor, but I am going to have some objections to his testimony because of the nature of the appraisal that was provid- ed. So I think that ought to really go to cross-examination." No formal objection to any portion of the appraiser's testimony was made.

twenty percent interest in Prudential Woodmont Realty at $117,000. She insists that Mr. Owens's expert's valuation of this interest at $27,000 is "against logic" and that the only credible evidence of the value of this interest was her expert's opinion that Mr. Owens's interest in the business was worth $221,000. According to Ms. Owens, the court was left with no choice other than to accept her expert's valuation opinion. We disagree.

■■■■■ Placing a value on a minority interest in a business is not an exact science. In the face of conflicting opinions regarding the value of a marital asset, the trial court may place a value on the asset that is within the range of the values presented by the competent evidence. *Kinard v. Kinard*, 986 S.W.2d at 231; *Wallace v. Wallace*, 733 S.W.2d at 107. Since valuation evidence is inherently subjective, a trial court's valuation decisions need not coincide precisely with the valuation opinions offered into evidence. *Waits v. Waits*, No. 01A01–9207–CV–00288, 1993 WL 49564, at *3 (Tenn.Ct.App. Feb.26, 1993) (No Tenn. R.App. P. 11 application filed).

Ms. Owens asserts that the opinion of Mr. Owens's expert did not adequately account for the additional income that Mr. Owens earned because he was required to share less of his commissions with the company than other affiliated agents were.[5] However, even if Ms. Owens successfully undermined the evidentiary weight of Mr. Owens's expert, her expert's opinion was not the only remaining evidence regarding the value of Mr. Owens's interest in the business. Mr. Owens him-self testified that he purchased his interest in the company in 1990 for $7,500 and that in 2001, Prudential Woodmont had purchased a sixteen percent interest in the business back from a former owner for $80,000.

The trial court obviously agreed that Mr. Owens's expert had undervalued his interest in the business. The trial court eventually valued Mr. Owens's interest at $117,000—four times more than the value placed on the interest by Mr. Owens's expert. In light of the other evidence of value in the record, the trial court was not obligated to accept the opinion of Ms. Owens's expert. Because the value the trial court placed on Mr. Owens's interest in Prudential Woodmont is within the range of values presented by competent evidence, we decline to second-guess this part of the trial court's decision.

### III.

#### THE DIVISION OF THE MARITAL ESTATE

Both parties are dissatisfied with the manner in which the trial court divided their marital estate. Ms. Owens argues that the trial court's essentially equal division of the net marital estate fails to take adequate account of her relative economic disadvantage. For his part, Mr. Owens insists that the division favors Ms. Owens and that the trial court erred by awarding both parties an equal interest in the Pruett–Owens Partnership.

#### A.

■■■■ Once the parties' marital property has been classified and valued, the trial

---

**5.** Apparently all the brokers and agents of Prudential Woodmont are required to pay six percent of their commissions to Prudential Financial. In addition, the agents must pay between twenty and thirty percent of their commission to Prudential Woodmont. While the owners of Prudential Woodmont are required to pay six percent of their commissions to Prudential Financial, they are not required to pay any portion of their commission to Prudential Woodmont.

court's goal is to divide the marital property in an essentially equitable manner. Tenn.Code Ann. § 36–4–121(a)(1); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn.Ct. App.2001). A division of marital property is not rendered inequitable simply because it is not precisely equal, *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn.2002), *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn.1996), or because each party did not receive a share of every piece of marital property, *Morton v. Morton*, 182 S.W.3d 821, 833–34 (Tenn.Ct.App.2005); *Manis v. Manis*, 49 S.W.3d at 306. The fairness of the trial court's approach is inevitably reflected in its results. *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn.Ct.App.2005); *Bolin v. Bolin*, 99 S.W.3d 102, 107 (Tenn. Ct.App.2002).

■ The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn.Code Ann. § 36–4–121(c) in light of the evidence that the parties have presented. *Flannary v. Flannary*, 121 S.W.3d at 650–51; *Tate v. Tate*, 138 S.W.3d 872, 875 (Tenn.Ct.App. 2003); *Kinard v. Kinard*, 986 S.W.2d at 230. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly*, 130 S.W.3d 783, 785 (Tenn.2004); *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct.App.1996); *Batson v. Batson*, 769 S.W.2d 849, 859. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. *Morton v. Morton*, 182 S.W.3d at 834. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36–4–121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly*, 130 S.W.3d at 785–86; *Gratton v. Gratton*, No. M2004–01964–COA–R3–CV, 2006 WL 794883, at *7 (Tenn.Ct.App. Mar.28, 2006) (No Tenn. R.App. P. 11 application filed); *Kinard v. Kinard*, 986 S.W.2d at 231.

■ The division of the marital estate includes both the division of the marital property and the allocation of the marital debt. Trial courts have not completely divided a marital estate until they have allocated both the marital property and the marital debt. *Robertson v. Robertson*, 76 S.W.3d at 341; *Hopkins v. Hopkins*, No. M2002–02233–COA–R3–CV, 2003 WL 21462971, at *6 (Tenn.Ct.App. June 25, 2003), *rev'd in part on other grounds*, 152 S.W.3d 447 (Tenn.2004); *Anderton v. Anderton*, 988 S.W.2d at 679. Thus, an examination of the manner in which a trial court divided the marital property must take into consideration how the trial court allocated the marital debt.

### B.

The trial court awarded each party essentially equal shares of the marital estate. Based on its valuation of the parties' marital property and marital debt, Mr. Owens received a net asset division valued at $408,705, and Ms. Owens received a net award of $404,368. The trial court's division of marital property and allocation of marital debt was as follows:

**Marital Property**

| Wife | | Husband | |
|---|---|---|---|
| Marital Residence | $345,000 | Boca Raton property | $ 20,000 |
| Pruett-Owens partnership | 134,250 | GOP Partnership | 149,689 |

| | | | |
|---|---|---|---|
| Insurance policies | 27,592 | Woodmont Prudential Realty | 117,000 |
| Household furnishings | 15,000 | Ragghianti-Owens partnership | 167,450 |
| SEP IRA | 56,550 | Pruett-Owens partnership | 134,250 |
| | | Insurance policies | 32,366 |
| | | Household furnishings | 15,000 |
| | | SEP IRA | 56,550 |
| | $578,392 | | $692,305 |

### Marital Debt

| Wife | | Husband | |
|---|---|---|---|
| 1st mortgage—marital home | $ 93,000 | 2nd mortgage—marital home | $100,000 |
| Credit card debt | 81,024 | Premier unsecured credit line | 80,000 |
| | | Suntrust unsecured credit line | 25,000 |
| | | Plus loans | 38,000 |
| | | Prudential Woodmont Realty | 13,000 |
| | | Doctor bills | 9,600 |
| | | American Express bill | 18,000 |
| | $174,024 | | $283,600 |
| Net Award | $404,368 | | $408,705 |
| | (49.7%) | | (50.3%) |

■ Two of the property interests included in the martial estate were Mr. Owens's interests in two partnerships. The first is the Pruett–Owens partnership.[6] The second is the Ragghianti–Owens partnership.[7] The trial court awarded the parties equal interests in the Pruett–Owens partnership, but awarded Mr. Owens all of his interest in the Ragghianti–Owens partnership despite Mr. Ragghianti's willingness to continue the partnership with Ms. Owens as partner rather than Mr. Owens.

■ The manner in which the trial court divided these properties raises some concern because it necessarily requires Mr. Owens and Ms. Owens to remain in business together. As a general matter, many divorced parties find post-divorce cooperation difficult, and thus property divi-sions are often structured to avoid, when possible, requiring divorced parties to remain in business together or to jointly own an asset that will require cooperation and mutual consent down the road. We have determined that there is basis for this concern with regard to the trial court's decision to award both parties a share of the Pruett–Owens partnership. Doing so was not required in order to divide the marital estate because an equitable division could have been accomplished by awarding Ms. Owens the marital interest in the Ragghianti–Owens partnership and awarding Mr. Owens the martial interest in the Pruett–Owens partnership.[8]

Accordingly, we have determined that three adjustments must be made to the

6. Mr. Owens and Ray Pruett formed the Pruett–Owens partnership to own, manage, and rent out three pieces of residential property. One of the houses managed by the partnership is titled jointly in the names of Ms. Owens and the wife of Mr. Pruett.

7. Mr. Owens and James Ragghianti formed the Ragghianti–Owens partnership to own, operate, and manage two residential properties and a vacant lot.

8. In light of this division, Ms. Owens will also be required to convey her interest in one of the properties managed by the Pruett–Owens partnership to Mr. Owens.

trial court's division of the marital estate. First, the value of Mr. Owens's interest in the Boca Raton house at the time of the divorce should be increased from $20,000 to $97,000. Second, the parties' interest in the Ragghianti–Owens partnership should be awarded to Ms. Owens. Third, the parties' interest in the Pruett–Owens partnership should be awarded to Mr. Owens. With these adjustments, the division of the marital estate is as follows:

## Marital Property[9]

| Wife | | Husband | |
|---|---|---|---|
| Marital Residence | $345,000 | Boca Raton property | $ 97,000 |
| Ragghianti-Owens partnership | 167,450 | GOP Partnership | 149,689 |
| Insurance policies | 27,592 | Woodmont Prudential Realty | 117,000 |
| Household furnishings | 15,000 | Pruett-Owens partnership | 268,500 |
| SEP IRA | 56,550 | Insurance policies | 32,366 |
| Household furnishings | 15,000 | | |
| | | SEP IRA | 56,550 |
| | $611,592 | | $736,105 |

## Marital Debt

| Wife | | Husband | |
|---|---|---|---|
| 1st mortgage—marital home | $ 93,000 | 2nd mortgage—marital home | $100,000 |
| Credit card debt | 81,024 | Premier unsecured credit line | 80,000 |
| | | Suntrust unsecured credit line | 25,000 |
| | | Plus loans | 38,000 |
| | | Prudential Woodmont Realty | 13,000 |
| | | Doctor bills | 9,600 |
| | | American Express bill | 18,000 |
| | $174,024 | | $283,660 |
| Net Award | $437,568 (49.2%) | | $452,445 (50.8%) |

We have also determined that this modified division of the marital estate properly balances the factors in Tenn.Code Ann. § 36–4–121(c), particularly Ms. Owens's age, her longtime status and contributions as a homemaker, and the difference between her and Mr. Owens's anticipated Social Security benefits.[10]

**9.** This table is the corrected table referenced in our *Opinion on Petition to Rehear, Infra.*

**10.** Ms. Owens filed a motion asking us to consider, post-judgment, the fact that Mr. Owens has already cashed in one of the life insurance policies he was awarded at the trial

## IV.

### Ms. Owens's Spousal Support Award

Ms. Owens also contends that the trial court erred with regard to both the duration and amount of her spousal support award. She insists that she is economically disadvantaged in comparison to Mr. Owens and that she is entitled to more spousal support based on the relevant factors in

court level. We reserved judgment pending oral argument. Because we have not modified the trial court's division of the insurance policies, it is unnecessary for us to consider the post-judgment fact.

Tenn.Code Ann. § 36–5–121(i) (2005). We agree.

## A.

There are no hard and fast rules for spousal support decisions. *Manis v. Manis,* 49 S.W.3d at 304; *Anderton v. Anderton,* 988 S.W.2d at 682; *Crain v. Crain,* 925 S.W.2d 232, 233 (Tenn.Ct.App. 1996). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn.2004); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn.2001); *Goodman v. Goodman,* 8 S.W.3d 289, 293 (Tenn.Ct. App.1999). Accordingly, appellate courts are generally disinclined to second-guess a trial court's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Nelson v. Nelson,* 106 S.W.3d 20, 23 (Tenn.Ct.App.2002); *Brown v. Brown,* 913 S.W.2d 163, 169 (Tenn.Ct.App.1994). Our role is not to fine tune a trial court's spousal support award, *Fox v. Fox,* 2006 WL 2535407, at *9; *Hartman v. Hartman,* No. E2000– 01927–COA–R3–CV, 2001 WL 823188, at *7 (Tenn.Ct.App. July 20, 2001) (No Tenn. R.App. P. 11 application filed), but rather to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Bogan v. Bogan,* 60 S.W.3d 721, 733 (Tenn.2001).

Tennessee law recognizes several separate classes of spousal support, including long-term periodic spousal support (alimony in futuro),[11] alimony in solido,[12] rehabilitative spousal support,[13] and transitional spousal support.[14] Tenn.Code Ann. § 36–5–121(d)(2) reflects a statutory preference favoring rehabilitative spousal support and transitional spousal support over long-term periodic spousal support. *Bratton v. Bratton,* 136 S.W.3d at 605; *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn.2003). However, this statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support. *Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn.1995).

The purpose of spousal support is to aid the disadvantaged spouse to become and remain self-sufficient and, when economic rehabilitation is not feasi-

---

**11.** Long-term periodic spousal support is intended to provide long-term support to an economically disadvantaged spouse who is unable to be rehabilitated. *Burlew v. Burlew,* 40 S.W.3d at 471; *Loria v. Loria,* 952 S.W.2d 836, 838 (Tenn.Ct.App.1997). It is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse. *Wright v. Quillen,* 83 S.W.3d 768, 773 (Tenn.Ct.App.2002).

**12.** Alimony in solido is a single lump sum payment of cash or property. Unlike alimony in futuro, it is considered a final judgment, ordinarily unchangeable by the court after the expiration of the time for appeal. *Loria v. Loria,* 952 S.W.2d at 838.

**13.** Rehabilitative spousal support is intended to enable an economically disadvantaged spouse to acquire additional education or training that will enable the spouse to achieve and maintain a standard of living comparable to the standard of living that existed during the marriage or to the post-divorce standard of living expected to be available to the other spouse. Tenn.Code Ann. § 36–5–121(e)(1) (2005); *see also Robertson v. Robertson,* 76 S.W.3d at 340–41; *Smith v. Smith,* 912 S.W.2d 155, 160 (Tenn.Ct.App.1995).

**14.** Transitional spousal support is paid for a definite duration when a court finds that rehabilitation is not necessary but that the economically disadvantaged spouse needs assistance adjusting to the economic consequences of divorce. Tenn.Code Ann. § 36–5– 121(d)(4).

ble, to mitigate the harsh economic realities of divorce. *Earls v. Earls,* 42 S.W.3d 877, 888 (Tenn.Ct.App.2000). While divorced couples often lack sufficient income or assets to enable both of them to retain their pre-divorce standard of living, *Brown v. Brown,* 913 S.W.2d at 169–70, the obligor spouse may be able to provide some "closing in money" to enable the disadvantaged spouse to approach his or her former financial condition. *Aaron v. Aaron,* 909 S.W.2d at 411.

■ Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case and require a careful balancing of all relevant factors, including those identified in Tenn. Code Ann. § 36–5–121(i). *Robertson v. Robertson,* 76 S.W.3d at 338; *Dube v. Dube,* 104 S.W.3d 863, 868 (Tenn.Ct.App. 2002); *Wilder v. Wilder,* 66 S.W.3d 892, 894 (Tenn.Ct.App.2001). Among these factors, the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson,* 76 S.W.3d at 342; *Bogan v. Bogan,* 60 S.W.3d at 730; *Sullivan v. Sullivan,* 107 S.W.3d 507, 510 (Tenn.Ct.App.2002). Of these two factors, the disadvantaged spouse's need is the threshold consideration. *Aaron v. Aaron,* 909 S.W.2d at 410; *Watters v. Watters,* 22 S.W.3d 817, 821 (Tenn.Ct.App.1999).

### B.

At the time of the trial in this case, both Ms. Owens and Mr. Owens were in their mid-fifties. Despite his failure to complete college, Mr. Owens had become a successful real estate broker and investor. He was earning between $12,000 and $13,000 per month, although the portion of his income based on commissions fluctuated. He had been diagnosed with Hepatitis C and cirrhosis of the liver and had recently begun receiving disability payments from the Veterans Administration in the amount of $1,310 per month. His cash flow was also affected by his commitment to pay the children's undergraduate education expenses at private colleges and by the large amount of unsecured debt allocated to him as part of the division of the parties' marital estate.

While Ms. Owens had a teaching certificate, she had not been actively employed since 1980. She had also obtained a real estate agent's license in 1978 and an associates degree in computer data entry in the 1980s. Even though this education and training went largely unused during the marriage, Ms. Owens had reacquired her real estate license and planned to make a career as a real estate agent. By the time of trial, Ms. Owens had not been working as a real estate agent long enough to determine whether she would be able to support herself in this line of work. The trial court specifically declined to find that Ms. Owens was economically disadvantaged despite the disparity in the parties' employment history and earnings. However, the court found that Ms. Owens was a "candidate for rehabilitation" and determined that she should receive $2,500 per month for three years and then $1,500 per month for three additional years.

Ms. Owens spent most of the last twenty-five years as a homemaker and parent. Her efforts enabled Mr. Owens to gain experience and to grow his real estate and investment businesses. At the same time, Ms. Owens's decision to stay at home eventually rendered her training and experience obsolete. By the time of the divorce hearing, Mr. Owens had an established career, while Ms. Owens faced an uncertain financial future. She had started on a new career as a realtor—one which will necessarily be short-lived because Ms. Owens faces retirement within ten years or

so. Because of her employment history, Ms. Owens will receive far lower Social Security benefits than Mr. Owens expects to receive.

Mr. Owens's medical condition may have reduced his life expectancy, but it has not impaired his ability to continue to work. His expected income far exceeds Ms. Owens's anticipated income. Thus, he remains in a better position to support himself, to continue to acquire capital assets, and to provide for his retirement. While both parties will be required to adjust their lifestyles to accommodate their post-divorce circumstances, Mr. Owens remains able to support himself in addition to honoring his commitment to pay for his children's educations at private colleges and to paying off the marital debt for which he will now be responsible. Based on this record, we are hard-pressed to reach any conclusion other than that Ms. Owens is economically disadvantaged in comparison to Mr. Owens.

▮ Based on the factors in Tenn.Code Ann. § 36–5–121(i), particularly the length of the parties' marriage, their relative education, training, and experience, the manner in which the trial court divided the marital estate, and the parties' age and health, we have determined that Ms. Owens is entitled to rehabilitative alimony in accordance with Tenn.Code Ann. § 36–5–121(e). However, we do not agree on the amount or duration of the trial court's rehabilitative alimony award. We have determined that Ms. Owens's spousal support should be increased to $3,000 per month beginning on May 1, 2007 and that Mr. Owens should continue to pay Ms. Owens rehabilitative support at the rate of $3,000 per month through November 2012. This support shall remain in the court's control and may be modified as the parties' cir-

cumstances require.[15] In addition, it shall not terminate on Mr. Owens's death.[16]

## V.

### Ms. Owens's Request for Attorney's Fees

Ms. Owens contends that the trial court erred by refusing to award her attorney's fees because she is economically disadvantaged in comparison to Mr. Owens. For his part, Mr. Owens asserts that Ms. Owens has received sufficient resources to pay her own attorney's fees and, therefore, that the trial court's decision was correct. We find that Ms. Owens has the better argument.

▮ Civil litigants in Tennessee's courts are generally required to be responsible for their own attorney's fees in the absence of a statute or contractual provision otherwise. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 33 (Tenn.Ct.App.2002). In domestic relations cases, three of the most common circumstances in which attorney's fees are appropriate include: (1) awards to economically disadvantaged spouses as spousal support, (2) awards to spouses who must return to court to enforce child support obligations, and (3) awards to spouses seeking to enforce a marital dissolution agreement when the agreement contains a provision for attorney's fees. *Elliott v. Elliott*, 149 S.W.3d 77, 88 (Tenn.Ct.App.2004).

▮ An award of attorney's fees to an economically disadvantaged spouse is usually characterized as alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct.App.2002); *Wilder v. Wilder*, 66 S.W.3d at 894. Accordingly, a trial court consider-

---

**15.** *See* Tenn.Code Ann. § 36–5–121(e)(2).

**16.** *See* Tenn.Code Ann. § 36–5–121(e)(3).

ing a request for attorney's fees must consider the factors contained in Tenn.Code Ann. § 36–5–121(i), with the most important factors being the need of the economically disadvantaged spouse and the ability of the obligor spouse to pay. *Eldridge v. Eldridge,* 137 S.W.3d 1, 24–25 (Tenn.Ct. App.2002); *Miller v. Miller,* 81 S.W.3d at 775. Trial courts customarily will award attorney's fees as alimony when an economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees. *Koja v. Koja,* 42 S.W.3d 94, 98 (Tenn.Ct.App.2000); *Palmer v. Palmer,* 562 S.W.2d 833, 839 (Tenn.Ct. App.1977). Therefore, a party need not be required to pay legal expenses out of funds and assets awarded by the trial court and intended to provide future support and income. *Batson v. Batson,* 769 S.W.2d at 862.

■■■ Awards of attorney's fees as alimony in solido are largely discretionary with the trial court. Thus, the appellate courts will ordinarily not interfere with an alimony in solido award for attorney's fees unless the trial court did not appropriately exercise its discretion based on the facts. *Aaron v. Aaron,* 909 S.W.2d at 411; *Eldridge v. Eldridge,* 137 S.W.3d at 25. A trial court fails to exercise its discretion properly when its decision is not supported by the evidence, when it applies an incorrect legal standard, when it reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Biscan v. Brown,* 160 S.W.3d 462, 468 (Tenn.2005).

■■ Ms. Owens cannot pay her attorney's fees without being forced to deplete the assets that she will eventually use to support herself in retirement. She has already been forced to rely upon her credit cards to pay for a portion of her legal expenses. While the rehabilitative alimony award will help her defray her living expenses, it will not enable her to pay the remaining $22,248.52 she owes her lawyer for services rendered in the trial court.[17] Therefore, the trial court erred by failing to award Ms. Owens alimony in solido in the amount of her legal expenses in the trial court—$37,948.52.

## VI.

### Ms. Owens's Request for Discretionary Costs

■■ Ms. Owens contends that the trial court erred by denying her request for discretionary costs. Mr. Owens, on the other hand, contends that Ms. Owens's discretionary costs were imprudently incurred and should not be reimbursed. We have determined that Ms. Owens cannot be considered a "prevailing party" in the divorce, and, therefore, she is ineligible for an award of discretionary costs.

■■ Tenn. R. Civ. P. 54.04(2) empowers the trial courts to award the prevailing party certain litigation expenses. These expenses include "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or

17. The itemized bill submitted with Ms. Owens's request for attorney's fees contained some computational errors. After correcting those errors, we have determined that Ms. Owens has incurred attorney's fees as follows:

| | | |
|---|---|---|
| 147.5 attorney hours | ($250 per hour) | $36,875.00 |
| 15.05 legal assistant hours | ($50 per hour) | 752.50 |
| Incoming Faxes, 123 pages | ($1 per page) | 123.00 |
| Outgoing Faxes, 251 pages | ($0.50 per page) | 125.50 |
| Misc. payments made on behalf of Ms. Owens | | 72.52 |
| Less payments received | | (15,700.00) |

trials, and guardian ad litem fees." The purpose of awarding these costs is not to punish the losing party but to make the prevailing party whole. *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 85 (Tenn.Ct.App. 2000). Even though a party is not automatically entitled to an award of discretionary costs under Tenn. R. Civ. P. 54.04(2) simply because it prevailed, *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 644 (Tenn.Ct.App.1993), the courts generally award discretionary costs if they are reasonable and if the party requesting them has filed a timely, properly supported motion satisfying the requirements of Tenn. R. Civ. P. 54.04(2). *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d at 84; *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn.Ct.App.2000).

█ Awards of discretionary costs are, naturally, decisions that lie within the sound discretion of the trial court. *Stalsworth v. Grummons*, 36 S.W.3d at 835; *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn.Ct.App.1998). The trial court is free to allocate costs among parties as the equities of the case demand. Tenn.Code Ann. § 20–12–119 (1994); *Perdue v. Green Branch Min. Co.*, 837 S.W.2d 56, 60 (Tenn. 1992). Therefore, we employ a deferential standard when reviewing decisions either to award or to deny discretionary costs.

█ When discretionary costs are awarded in divorce cases, they are generally awarded to the spouse who is granted the divorce. *See, e.g., Buchanan v. Buchanan*, No. E2002–00915–COA–R3–CV, 2003 WL 465571, at *3 (Tenn.Ct.App. Feb.25, 2003) (No Tenn. R.App. P. 11 application filed); *Galligan v. Galligan*, No.

M2001–00619–COA–R3–CV, 2002 WL 773059, at *11 (Tenn.Ct.App. April 30, 2002) *perm. app. denied* (Tenn. Oct. 21, 2002). In this case, neither party was awarded the divorce because the trial court simply declared the parties divorced in accordance with Tenn.Code Ann. § 36–4–129(b) (2005). Because neither party was found at fault in this case, we must look elsewhere to determine whether Ms. Owens should be deemed to be the prevailing party for the purpose of Tenn. R. Civ. P. 54.04(2).

█ Aside from the grounds for divorce, the most contested issues in this case centered on the valuation of the marital property and the division of the marital estate and the type, amount, and duration of the spousal support requested by Ms. Owens. Neither party clearly prevailed on these issues. The trial court's decisions regarding the value of the marital property did not favor either side but rather took a middle course between their valuation testimony. Similarly, even though Ms. Owens prevailed on her request for spousal support, she received far less than she requested. A finding that a spouse is economically disadvantaged does not automatically translate into a right to recover discretionary costs. *Walker v. Walker*, No. M2005–01561–COA–R3–CV, 2006 WL 1328922, at *6 (Tenn.Ct.App. May 12, 2006) (No Tenn. R.App. P. 11 application filed). On this record, we are unable to determine which party prevailed. Therefore, the trial court did not abuse its discretion when it refused Ms. Owens's request for discretionary costs.[18]

| Total Due | $22,248.52 |
|---|---|

**18.** As a final matter, Ms. Owens questioned on appeal whether the trial court erred in failing to allow counsel for Ms. Owens to read the deposition of Mr. Owens into the record. However, Ms. Owens did not make a timely objection to the trial court's stance on the

matter or make an offer of proof thereon. Tenn. R. Evid. 103(a)(2); *Tire Shredders, Inc. v. ERM–North Cent., Inc.*, 15 S.W.3d 849, 864

## VII.

The judgment of the trial court is affirmed as modified herein. We remand to the trial court for further proceedings consistent with this opinion. We tax costs in this matter to James Emery Owens for which execution, if necessary, may issue.

## OPINION DENYING PETITION FOR REHEARING

### WILLIAM C. KOCH, JR., P.J., M.S.

Ms. Owens has filed a timely petition for rehearing in accordance with Tenn. R.App. P. 39. She suggests that this court, in our March 29, 2007 opinion, (1) failed to equitably divide the marital estate, (2) failed to address her request for attorney's fees on appeal, and (3) improperly denied her discretionary costs incurred at trial. While we have determined that the points raised in Ms. Owens's petition do not require modification of the conclusions in our March 29, 2007 opinion, we have determined that the table illustrating our division of the marital estate on page 492 of the opinion should be revised to more accurately reflect our decision.

## I.

In accordance with the parties' agreement, the trial court's division of the marital estate included an award to each party of household furnishings valued at $15,000. This division is accurately reflected in the first table that appears on pages 8 and 9 of

the opinion. However, the award of $15,000 worth of household furnishings to Mr. Owen was not reflected in the table of the division of the marital estate as approved by this court. Therefore, the second table illustrating this court's revisions to the division of the marital estate has been corrected in the body of the opinion.

Adding $15,000 to Mr. Owens's side of the ledger necessarily results in a change in the net distribution to the parties. Rather than receiving 49.7% of the marital estate as determined by the trial court, Ms. Owens will now actually receive 49.2%. She insists in her petition for rehearing that awarding her 49.2% of the net marital estate is inequitable. We respectfully disagree.

■ Ms. Owens argues that awarding her only 49.2% of the net marital estate is inequitable under *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn.2002) and *Crabtree v. Crabtree*, 16 S.W.3d 356, 361 n. 4 (Tenn.2000).[1] Both cases encourage trial and appellate courts to make provisions for a disadvantaged spouse through the division of the marital estate. Our division of the estate, particularly with regard to the marital debt, reflects our adherence to that concept. Mr. Owens is charged with repayment of substantially all of the marital debt, which consists of almost $300,000 in largely unsecured liabilities. Ms. Owens, on the other hand, is made responsible only for a $93,000 mortgage and for

(Tenn.Ct.App.1999). Had we addressed the issue, we would have determined that there is no evidence in the record to indicate that the outcome of the trial would have been different had the deposition testimony been read directly into the record. *See Pankow v. Mitchell*, 737 S.W.2d 293, 298 (Tenn.Ct.App.1987). Further, Ms. Owens conceded as much in her brief.

1. In *Crabtree v. Crabtree*, the Tennessee Supreme Court held, among other things, that

concurrent awards of rehabilitative and long-term alimony were not appropriate. *Crabtree v. Crabtree*, 16 S.W.3d at 360. However, the Tennessee General Assembly later amended Tenn.Code Ann. § 36–5–121(d)(4) (2005) to authorize alimony in futuro awards in addition to rehabilitative alimony awards. *See Anderson v. Anderson*, No. M2005–02029–COA–R3–CV, 2007 WL 957186, at *5 (Tenn. Ct.App. Mar.29, 2007).

$81,024 in credit card debt that she incurred after her separation from Mr. Owens. As we have already explained, the division of the Owenses' marital estate was made after careful balancing of the factors in Tenn.Code Ann. § 36–4–121(c), with particular attention paid to Ms. Owens's age, contributions as a homemaker, and anticipated social security benefits. Therefore, we decline to rehear Ms. Owens with respect to the division of the marital estate.

## II.

Ms. Owens also suggests that we failed to address her request for attorney's fees on appeal. However, she overlooks the fact that she did not request attorney's fees in her original appellant's brief. It was not until she filed her reply brief that Ms. Owens mentioned that she would like to be awarded attorney's fees incurred on appeal. A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues. Tenn. R.App. P. 27(c); *Denver Area Meat Cutters & Employers Pension Plan v. Clayton,* 209 S.W.3d 584, 594 (Tenn.Ct. App.2006). When drafting an appellant brief, it is incumbent upon the appellant to raise the issues for review, Tenn. R.App. P. 27(a)(4), and to state "the precise relief sought," Tenn. R.App. P. 27(a)(8). Because an award of attorney's fees generated in pursuing the appeal is a form of relief, the rule requires it to be stated. *Killingsworth v. Ted Russell Ford, Inc.,* 205 S.W.3d 406, 411 (Tenn.2006). Because Ms. Owens failed to timely request attorney's fees on appeal, we decline to "rehear" her on the matter.

## III.

Finally, Ms. Owens takes issue with our decision to affirm the trial court's decision to deny her request for discretionary costs. She against insists that she was the prevailing party at trial and that we erred as a matter of law in denying her that status. Ms. Owens's claim does not find support in the law. Ms. Owens notes that the only published Tennessee Supreme Court opinion on the subject matter finds that the prevailing party is the one who successfully maintained a claim against another party. *McReynolds v. Cates,* 26 Tenn. (7 Hum.) 29, 30 (1846). She also points to *McIntyre v. Traughber,* 884 S.W.2d 134, 138 (Tenn.Ct.App.1994), in which this court determined whether a litigant was a "prevailing party" for the purposes of the Federal Civil Rights Act, 42 U.S.C.A. § 1988 (2003). To the extent that *McIntyre v. Traughber* is relevant for our present inquiry, it suggests that a party's success must be more than technical if that party is to be considered to have prevailed.[2]

As we have previously discussed, Ms. Owens's victories, such that they are, lie primarily in convincing the trial court to choose a middle road between her and Mr. Owens's valuations of marital property and in obtaining an alimony award in much the same way. Ms. Owens suggests that we should "compare how she fared ... to how [Mr. Owens] wanted her to fare," and, from that, we should determine that she was the prevailing party at trial. This is an unworkable solution. Indeed, Mr. Ow-

---

**2.** Ms. Owens also cites a memorandum opinion by the Supreme Court's Special Worker's Compensation Panel, *Allen v. Jones,* No. 02S01–9512–CV–00127, 1996 WL 631355, at *4 (Tenn. Workers' Comp. Panel Aug. 21, 1996), *motion for review denied* (Tenn. Nov. 1, 1996), which reversed an award of discretionary costs because the trial court had awarded a co-defendant costs against another co-defendant, even though the co-defendants had not asserted claims against each other. This case merely reinforces the well-established idea that a prevailing party is one who successfully asserts a claim against another party.

ens could make the same argument in support of the theory that he is the prevailing party. Although parties to divorce actions may often consider themselves to be combatants in war, the court's ultimate role in ending a marriage is to arrive at equitable treatment for both parties. As we noted in our March 29, 2007 opinion, such circumstances do not always make for clear "winners" and "losers." The record in this case does not reveal a "prevailing party." Even if it did, Ms. Owens has not demonstrated how the trial court can be said to have abused its discretion in denying her an award of discretionary costs. Accordingly, we decline to rehear her on the matter.

### IV.

We deny Ms. Owens's petition to rehear. However, we also direct that the table appearing on page 492 of our March 29, 2007 opinion be replaced by the revised table contained herein. We tax the costs of this petition for rehearing to Linda Alexander Owens and her surety for which execution, if necessary, may issue.