IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 21, 2019 Session

## RASHELL HOLT, ET AL. v. JOHN ROBERT WHEDBEE, ET AL.

Appeal from the Chancery Court for Knox County
No. 185385-2    Clarence E. Pridemore, Jr., Chancellor

_____

No. E2018-01244-COA-R3-CV
_____

This appeal concerns an alleged breach of contract. Patsy Yearwood ("Decedent"), an insurance agent with John Robert Whedbee and James L. Whedbee at the Whedbee Insurance Agency ("Defendants"), entered into an agreement ("the Agreement") with Defendants whereby Defendants would buy all of Decedent's contracts of insurance and expirations and renewals. For a set period of time, Decedent would receive 50% of her commissions and renewals and Defendants were to receive the other 50%. Decedent, in declining health, was to assist in retaining and producing business. Upon Decedent's death, her commissions were to go to her estate. Decedent died and three months later, Defendants halted payments. Decedent's daughter RaShell Holt, individually and as Executrix of the Estate of Patsy Yearwood ("Plaintiff"), sued Defendants in the Chancery Court for Knox County ("the Trial Court"). Defendants filed a motion for summary judgment, which the Trial Court granted on the basis that Decedent first breached the Agreement by not working in the period leading up to her death. Plaintiff appealed. We find and hold that there is a genuine issue of material fact as to whether Decedent breached the Agreement by ceasing to work. We hold further that, even if Decedent stopped working, this in itself was not a breach of contract because her sickness and death were anticipated in the Agreement. We hold further still that, even if Decedent breached the Agreement, Defendants were not entitled to continue receiving all the benefits of the Agreement while denying the estate its benefits. We reverse the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and JOHN W. MCCLARTY, JJ., joined.

James C. Ensor, Knoxville, Tennessee, for the appellants, RaShell Holt and the Estate of Patsy Yearwood.

John B. Dupree, Knoxville, Tennessee, for the appellees, John Robert Whedbee, James L. Whedbee[1], and Whedbee Insurance Agency, LLC.

**OPINION**

**Background**

In September 2011, Decedent entered into the Agreement with Defendants. Defendants would purchase all of Decedent's contracts of insurance and expirations and renewals over the span of four years from October 1, 2011 to October 1, 2015. Decedent was to receive 50% of her commissions and renewals and Defendants were to receive the other half, until October 1, 2015, when all of Decedent's commissions and her contracts of insurance and expirations and renewals then would go to Defendants. Under the Agreement, Decedent was to assist in retaining and producing business. If Decedent died before the end of the four-year period, Defendants would then own all of Decedent's contracts of insurance and expirations and renewals. Upon Decedent's death, her share of 50% of her commissions would be paid to her estate. The Agreement, typed in all capital letters and containing handwritten modifications, states:

THIS DOCUMENT IS A CONTRACT IN WHICH THE BUSINESS KNOWN AS WHEDBEE INSURANCE AGENCY LLC AND OR JOHN ROBERT WHEDBEE AND JAMES L WHEDBEE WILL PURCHASE ALL OF PATSY YEARWOOD'S CONTRACTS OF INSURANCE AND EXPIRATIONS AND RENEWALS OVER THE SPACE OF FOUR YEARS FROM 10/01/2011 TO 10/01/2015.

BEGINNING 10/01/2011 THE COMMISION SPLIT WILL BE 50% TO EACH PATSY YEARWOOD AND WHEDBEE INSURANCE AGENCY. PATSY YEARWOOD WILL ASSIST IN RETAINING AND PRODUCING BUSINESS DURING THIS CONTRACT. ON 10/01/2015 ALL CONTRACTS OF INSURANCE PRODUCED BY PATSY YEARWOOD AND ALL EXPIRATIONS OWNED BY SAME WILL BECOME THE SOLE PROPERTY OF WHEDBEE INSURANCE AGENCY LLC, JOHN ROBERT WHEDBEE, AND OR JAMES L WHEDBEE.

IN THE EVENT OF PATSY YEARWOOD'S DEATH THIS [THE BALANCE TO PAY MY ESTATE][2]

---

[1] A suggestion of death was filed below regarding James L. Whedbee. No action was taken as to the suggestion.
[2] This bracketed portion was handwritten and initialed.

-2-

The signatories to the Agreement were Decedent, John Robert Whedbee and James L. Whedbee.

In July 2012, Decedent died. Three months later, Defendants halted payments. In June 2013, Plaintiff sued Defendants in the Trial Court. Plaintiff alleged that Defendants "are collecting 100% on all contracts, renewals, and expirations of the Yearwood contracts." Plaintiff sought what was owed to Decedent's estate under the Agreement. Defendants filed an answer in opposition. Defendants admitted "that commissions on premiums paid have been collected and charge-backs have been assigned pursuant to normal protocol." However, Defendants denied "that Yearwood entirely performed under the contract because she was very ill and probably could not complete all of her obligations thereunder."

In October 2016, Defendants filed a motion for summary judgment contending that Decedent first breached the Agreement by failing to assist in retaining and producing business as required of her under the Agreement. Defendants submitted these as undisputed facts:[3]

> 1. The intent of the parties in this case was that the commissions would be split between the Whedbee Insurance Agency, LLC and Patsy Yearwood. Affidavit of Robert Whedbee.
> 2. The intent of the parties in this case was that the Whedbee Insurance Agency, LLC and Patsy Yearwood would be bound by the obligations under the contract, not James L. Whedbee and John Robert Whedbee individually. Id.
> 3. All commissions earned under the contract were direct deposited into the Whedbee Insurance Agency, LLC bank account. Id.
> 4. No commission earned under the contract were ever received by the Whedbee Insurance Agency LLC not not [sic] James L. Whedbee and John Robert Whedbee individually. Id.
> 5. Mrs. Yearwood stopped coming into the office to assist in retaining and producing business. Id.
> 6. Shortly after the contract was signed, Mrs. Yearwood stopped assisting in the work on her accounts and in salvaging her business. Id.
> 7. Mrs. Yearwood failed to make contact with a very significant portion of her clients prior to renewal times. Id.
> 8. Mrs. Yearwood failed to invite her clients into the office to meet Robert Whedbee so that her contracts could transition to the Agency. Id.

---

[3] In what likely was a drafting error, Defendants' undisputed facts are said to be submitted by a "Dr. Menachem Langer," an individual not part of this appeal.

9. Mrs. Yearwood did not know how to use the systems or upload applications to the carriers and she could not do the work under the contract thus causing Robert Whedbee to perform this work. Id.

10. Mrs. Yearwood did not code her files meaning that that [sic] the Agency had great difficulty determining what accounts were subject to the contract. Id.

11. Mrs. Yearwood did not return phone calls and Robert Whedbee was forced to assist her customers even though he had no relationship with her clients. Id.

12. The Agency tried to help with her customers but needed Mrs. Yearwood's assistance and could not retain the business because she was not around the office to assist with customer relations. Id.

13. The Agency and the Whedbees were strangers to Mrs. Yearwood's customers. Id.

14. The failure to return calls occurred many times and 80% of Mrs. Yearwood's customers were lost because of this failure. Id.

15. In first few months Mrs. Yearwood came to work, but after that she fell off and would not perform the tasks that were asked of her in order to assist in retaining and producing business. Id.

16. Mrs. Yearwood was asked many times to return calls to her customers but she would not return the calls frequently; because of this breach, the business was lost. Id.

17. After all the accountings, Mrs. Yearwood was $495.66 in arrears after the charge backs that happened because the policies were not renewed. Id.

18. Commissions were paid up front but when a policy cancelled, the agent owes the pro-rated commission back to the Agency. Id.

19. Charge backs occurred with Mrs. Yearwood's accounts. Id.

20. All due and owing commissions have been paid under the contract. Id.

In February 2017, Plaintiff filed a response to Defendants' motion for summary judgment. Plaintiff also filed her statement of disputed facts as well as her own affidavit. In her affidavit, Plaintiff stated:

1. I am over the age of eighteen (18) years and am competent to testify to the matters contained herein, all of which are based on my personal knowledge.

2. While living, my mother worked as an insurance agent with John Robert Whedbee and James L. Whedbee at the Whedbee Insurance Agency.

3. My mother signed a contract that I later attached to a Complaint filed against John Robert Whedbee and James L. Whedbee and the Whedbee Insurance Agency.

-4-

4. My mother worked pursuant to the subject contract until she died on July 5, 2012.

5. My mother was paid regularly by the Whedbee Insurance Agency while she was alive.

6. In October of 2012, James L Whedbee sent me (I am the Executrix of my mother's estate) a check for mother's share of commissions for July, August, and September of 2012.

7. On September 6, 2012, James L Whedbee wrote me a letter saying that he may not be able to pay the estate in the future because the estate does not have a license to sell insurance.

8. The estate has not received a check since the October 2012 check mentioned above.

9. The Whedbee Insurance Agency, through John and James Whedbee have since represented that they do not know which clients/contracts belonged to my mother.

10. The Whedbee Insurance Agency has represented/represents to me that all of the contracts have cancelled, thus the estate is owed no money.

11. The Whedbee Insurance Agency now states that they do not owe the [e]state any money because she breached the contract while alive.

In October 2017, a hearing was conducted before the Trial Court regarding Defendants' motion for summary judgment. Later that month, the Trial Court entered an order granting Defendants' motion, stating in relevant part as follows:

1. Defendants filed a Motion for Summary Judgment on October 12, 201[6]. In this Motion, it is alleged Patsy Yearwood first breached the contract between the parties by failing to assist in retaining and producing business for the Defendants.

2. Plaintiffs filed a response to the Defendants' Motion for Summary Judgment on February 3, 2017. However, it did not contain a denial of the allegation that Patsy Yearwood first breached the contract between the parties.

3. It is well settled law in Tennessee that the party that first materially breached a contract is "not entitled to damages stemming from the other party's later material breach of the same contract." *United Brake System Inc, v. American Environmental Protection*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997).

Therefore, this Court is of the opinion the Defendants are entitled to summary judgment as a matter of law and Plaintiffs' cause of action is DISMISSED.

Plaintiff filed a motion to alter or amend. In June 2018, the Trial Court entered an order denying Plaintiff's motion. Plaintiff timely appealed to this Court.

## Discussion

We restate and consolidate the multiple issues and sub-issues Plaintiff raises on appeal into the following dispositive issues: 1) whether the Trial Court erred in granting Defendants' motion for summary judgment where the motion lacked any recitation that there was no genuine issue of material fact; 2) whether material facts were in dispute such that summary judgment was precluded; 3) whether the Trial Court erred in finding that Decedent breached the Agreement by failing to assist in retaining and producing business where the Agreement contemplated Decedent's decline and death; and, 4) whether the Trial Court erred in finding the "first-to-breach" rule applicable where Defendants continued receiving all the benefits of the Agreement.

This case was decided by summary judgment. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> ***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is

-6-

appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address the issue of whether the Trial Court erred in granting Defendants' motion for summary judgment where the motion lacked any recitation that there was no genuine issue of material fact. Defendants argue this issue was waived because it was first raised in Plaintiff's motion to alter or amend. Indeed, "[a] Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). Based on this limited record, it appears Plaintiff raised this issue for the first time in her motion to alter or amend. The issue is therefore waived.

If, however, the issue were properly before us, Plaintiff would not prevail on it. Plaintiff cites *Keystone Ins. Co. v. Griffith*, 659 S. W. 2d 364, 366 (Tenn. Ct. App. 1983) for the proposition that the failure to include a recitation that there was no genuine issue of material fact is fatal to a motion for summary judgment. This Court took a different view in the more recent case of *Dondero v. Accuray Incorporated*, No. E2017-01741-COA-R3-CV, 2018 WL 3600014 (Tenn. Ct. App. July 26, 2018), *Rule 11 appl. perm. appeal denied Nov. 15, 2018*. Facing the same issue, we stated:

> In the reply briefs filed by the Donderos, they attempt to raise an additional issue regarding whether two of the defendants' motions for summary judgment should have been denied for failure to recite that there was no genuine issue of material fact. Issues cannot be raised for the first time in a reply brief. *See Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."). We note, however, that this argument lacked merit in any event. *See Anderson v. DTB Corp.*, No. 89-172-II, 1990 WL 33380, at *2 (Tenn. Ct. App. Mar. 28, 1990) ("A motion for summary judgment need not contain any particular incantation to comply with the rules as long as it states the basis for the motion and the relief being sought.")

*Dondero*, 2018 WL 3600014, at *5 n. 2. The proposition that no particular incantation is necessary in a motion for summary judgment is a sound one, which we follow. We are less interested in whether Defendants' motion for summary judgment proclaimed there was no genuine issue of material fact than we are in whether there was a genuine issue of material fact, an issue we will address next.

We look to Defendants' motion for summary judgment, Plaintiff's response, and supporting documents to determine whether there was a genuine issue of material fact. Defendants' statement of undisputed facts identified fairly specific ways in which Decedent failed to assist in retaining and producing business. For instance, Defendants assert that Decedent did not return phone calls, did not code her files, did not invite her clients into the office, and stopped coming into the office, all of which was damaging to the business. On the other hand, Plaintiff stated in her affidavit that Decedent "worked pursuant to the subject contract until she died on July 5, 2012." According to Defendants, Plaintiff's generic assertion fails to rebut their detailed cataloguing of Decedent's shortcomings and fails to create a genuine issue of material fact.

Plaintiff's statement, brief as it is, contradicts Defendants' submitted facts. If Defendants agree with Plaintiff that Decedent worked pursuant to the Agreement until her death, then they would have no grounds for alleging Decedent breached the

Agreement. We add that the Agreement says nothing specifically about, for instance, answering phones or coding files. Furthermore, the fact that Defendants continued to pay until three months after Decedent's death suggests they had no misgivings about the quality of her work. Indeed, according to Plaintiff's affidavit, Defendants only alleged Decedent breached the Agreement after offering a litany of excuses as to why they could not pay: the estate lacked a license to sell insurance; all of the contracts were cancelled; and Defendants did not know which accounts belonged to Decedent. The parties' positions are at odds, and it is inappropriate to weigh competing factual claims at the summary judgment stage. We find and hold that the parties disputed whether Decedent worked pursuant to the Agreement until her death, and the Trial Court erred in granting summary judgment to Defendants on the basis of that disputed material fact.

Even if it were undisputed that Decedent stopped assisting in retaining and producing business, our next issue concerns whether such stoppage would constitute a material breach of the Agreement. Decedent was sick and dying, and the Agreement contemplated this reality. Defendants even stated in their answer that Decedent was probably too ill to fulfill her obligations. The Agreement includes a specific handwritten provision for Decedent's estate to receive what was owed to her under the Agreement after she died. This was not an employment contract but instead, as argued by Plaintiff, a contract whereby Decedent sold her book of business. The fact that Decedent grew too sick to help in retaining and producing business was not, in itself, a material breach of the Agreement. On the contrary, it was anticipated. Decedent, sick and dying, did not have to code files and answer phones right up until the moment she died to avoid breaching the Agreement.

The final issue we address is whether the Trial Court erred in finding the "first-to-breach" rule applicable where Defendants went on receiving the benefits of the Agreement. As an initial matter, Plaintiff argues that Defendants waived the first-to-breach defense by raising it for the first time in their motion for summary judgment rather than in their answer. As quoted above, however, Defendants in their answer did articulate the factual basis for their defense that Decedent failed to fulfill her contractual obligations before her death. Plaintiff had ample opportunity to prepare for this approach by Defendants. We decline to find waiver, and return to the merits.

Plaintiff argues that, even if Decedent first materially breached the Agreement, Defendants are not entitled to go on receiving all of the benefits under the Agreement. We note that "all of the benefits" includes not only the benefits Defendants were to receive under the Agreement but also those benefits that were to go to Decedent and then her estate. This Court has discussed the first-to-breach rule as follows:

The Defendants seek to assert the first-to-breach rule, namely: "A party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract." *McClain v. Kimbrough Constr. Co.*, 806 S.W.2d 194, 199 (Tenn. Ct. App. 1990). We note, however, that "[a] party owed performance may . . . waive its right to assert the first uncured material breach as a bar to recovery on its own subsequent breach." *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 812 (Tenn. Ct. App. 2009). A party "waive[s] its right to assert first material breach as a bar to recovery if it accepts the benefits of the contract with knowledge of the breach." *Id*. at 813. Under some circumstances, a party's failure to assert the "first" breach may not result in waiver. In *Madden Phillips Constr.*, the Court explained this principle and gave examples of situations in which a party's failure to assert a breach may not result in waiver:

> Ordinarily, a party who first materially breaches may not recover under the contract. *United Brake Sys. [v. AEP ]*, 963 S.W.2d [749] at 756 [ (Tenn. Ct. App. 1997) ]. A non-breaching party may nevertheless waive its right to assert first material breach as a bar to recovery if it accepts the benefits of the contract with knowledge of a breach. *Aero Squadron*, 169 S.W.3d at 635-36 (citing 17 Am.Jur.2d *Contracts* § 447 (1964)); *see also SMR Techs., Inc. v. Aircraft Parts Int'l Combs, Inc.*, 141 F.Supp.2d 923, 934 (W.D. Tenn. 2001), *vacated for lack of subject matter jurisdiction*, No. 00-2563, 2004 WL 595010 (W.D. Tenn. Mar. 23, 2004). But there are circumstances where acceptance of contractual benefits does not constitute waiver. For example:
>
>> *[M]ere efforts on the part of an innocent party to persuade the promisor, who repudiates his agreement, to reject that repudiation and proceed honorably in the performance of his agreement have been held not to involve a waiver of the innocent party's right to avail himself of the breach after the efforts finally prove unsuccessful.* Moreover, it has been held that the fact that a party did not act upon a breach but negotiated with the other party for a new contract does not constitute an acquiescence in the breach where such action

-10-

was induced by misrepresentation by such other party. A defendant is precluded from claiming a waiver of breach of contract where he fraudulently induces the plaintiff to permit him to continue and thereafter violates the promises he made to induce the plaintiff to give such permission.

*W.F. Holt Co. v. A & E Elec. Co.*, 665 S.W.2d 722, 733-34 Tenn. Ct. App. 1983) (alteration in original) (quoting 17 Am.Jur.2d Contracts § 447 (1964)).

*Id.* at 813. Thus, where a party to a contract fails to assert the other party's breach for reasons such as fraudulent inducement or the party's attempt to convince the breaching party to comply with the contract, the failure to assert the breach may not constitute waiver.

*White v. Empire Exp., Inc.*, 395 S.W.3d 696, 715-16 (Tenn. Ct. App. 2012).

Thus, a party asserting the first-to-breach rule may waive that defense if said party continues to receive benefits under the contract with knowledge of a breach. Here, Defendants continue to receive the benefits of the Agreement while no longer paying under the Agreement. This they may not do. Even if Decedent materially breached the Agreement, which has not been established at this summary judgment stage, Defendants are not entitled to keep 100% of the commissions and Decedent's entire book of business all while refusing to meet their obligations under the Agreement.

For their part, Defendants state that there is nothing owed. If Defendants are correct about that, it is unclear why this case has not been resolved by just doing an accounting. In any event, how much, if anything, is owed by Defendants is yet another factual dispute making summary judgment inappropriate. For the multiple reasons discussed throughout, we reverse the grant of summary judgment and remand for further proceedings consistent with this Opinion.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellees, John Robert Whedbee, James L. Whedbee, and Whedbee Insurance Agency, LLC.

_____
D. MICHAEL SWINEY, CHIEF JUDGE