IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2019

**STATE OF TENNESSEE v. NATHANIEL A. RHODES**

**Appeal from the Criminal Court for Wilson County
Nos. 15-CR-1060, 15-CR-1061      Brody N. Kane, Judge**

_____

**No. M2018-00136-CCA-R3-CD**

_____

The Defendant-Appellant, Nathaniel A. Rhodes, entered guilty pleas to one count of TennCare fraud in case number 15-CR-1060 and to one count of sale of Alprazolam in case number 15-CR-1061, with the trial court to determine the range, length, and manner of service of his sentences following a sentencing hearing. See Tenn. Code Ann. §§ 71-5-2601(a)(5)(A), 39-17-417. Thereafter, the trial court imposed two consecutive ten-year sentences in confinement. On appeal, Rhodes argues that the trial court imposed an excessive sentence.[1] After reviewing the record in this case, we affirm the judgment of the trial court but remand the case for entry of corrected judgments as specified in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Thomas A. Maynard, Lebanon, Tennessee, for the Defendant-Appellant, Nathaniel A. Rhodes.

_____

[1] Although represented by counsel throughout this appeal, Rhodes filed a pro se reply brief in response to the State's appellate brief, wherein he raised additional issues that were not included in his initial appellate brief. We note that "a defendant in a criminal case may not proceed pro se while simultaneously being represented by counsel." State v. Davis, 141 S.W.3d 600, 615 n.12 (Tenn. 2004) (citing Wallace v. State, 121 S.W.3d 652, 655 n.2 (Tenn. 2003)). Accordingly, we will not consider the issues raised in Rhodes' pro se reply brief. We also recognize that "[a] reply brief is limited in scope to a rebuttal of the argument advanced in the appellee's brief." Caruthers v. State, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991). "[I]t is not a vehicle for raising new issues." Owens v. Owens, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007); see Caruthers, 814 S.W.2d at 69.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Jason L. Lawson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On August 20, 2015, Rhodes was indicted in case number 15-CR-1060 for three counts of TennCare fraud. The same day, Rhodes was indicted in case number 15-CR-1061 for sale of Alprazolam in Count 1, sale of Oxycodone in Count 2, and sale of Alprazolam in Count 3. Thereafter, Rhodes retained trial counsel to represent him.

On May 19, 2017, Rhodes entered into a plea agreement and asked the trial court to accept his guilty pleas to TennCare fraud in Count 1 of 15-CR-1060 and to sale of Alprazolam in Count 1 of 15-CR-1061, with the trial court to determine the range, length, and manner of service of his sentences following a sentencing hearing. At the plea submission hearing the same day, the State provided the following facts in support of Rhodes' guilty pleas:

[Mr. Rhodes] went to the doctor and . . . because of the issues . . . described by Mr. Rhodes, the doctor did prescribe him [A]lprazolam.

Mr. Rhodes went and picked up that prescription. Tenn[C]are did pay for the doctor office visit at which he obtained the prescription for the [A]lprazolam. When he picked it up he did pay for that with his own funds, however, the Tenn[C]are fraud is based upon the office visit, Tenn[C]are having to spend monies.

Mr. Rhodes went out a very short time after obtaining that prescription and he did sell some of those pills to a confidential informant [who] was working with the Wilson County Sheriff's Department. The confidential informant told the detectives that Mr. Rhodes had [A]lprazolam for sale and that he could purchase [A]lprazolam from him.

The informant met with the detective and was searched making sure that there were no drugs or money on his person, then the informant was fitted with a video recording device. The informant then left and went to a location here in Wilson County, which was the Knight's Inn at 941 Murfreesboro Road, I believe.

Once there he went in to Room 115 and at that time met with Mr. Rhodes. There was a hand to hand exchange in which Mr. Rhodes gave the informant the pills. The informant gave Mr. Rhodes the money. Once that was completed the informant left and went and met back with the detectives.

He turned the pills that he had purchased from Mr. Rhodes over to the detectives. The detectives sent those pills to the Crime Lab and they were confirmed to be [A]lprazolam, and Mr. Rhodes was identified as the person who had made that sale.

At the conclusion of this hearing, Rhodes entered his guilty pleas to TennCare fraud and to sale of Alprazolam. Pursuant to Rhodes' plea agreement, the remaining counts in case numbers 15-CR-1060 and 15-CR-1061 were dismissed.

On July 28, 2018, following a sentencing hearing, the trial court sentenced Rhodes as a Range III, persistent offender to two consecutive ten-year sentences in confinement for these convictions. The judgment forms for these two convictions show a "Date of Entry of Judgment" of July 28, 2017 but also reflect that they were not filed in the clerk's office until August 1, 2017.

On August 22, 2017, trial counsel filed a notice of appeal on Rhodes' behalf in the trial court seeking relief from the sentences entered in case numbers 15-CR-1060 and 15-CR-1061. On August 29, 2017, the trial court clerk's office sent a letter to trial counsel informing him that the notice of appeal must be filed in the appellate court and that the clerk's office was returning his original notice of appeal. The record does not show that trial counsel ever filed the notice of appeal with this court, and it does not provide an explanation as to why trial counsel failed to do so.

On September 5, 2017, a corrected judgment, which reflected the correct felony classification for the TennCare fraud conviction, was entered. Although this corrected judgment was not filed in the clerk's office until September 5, 2017, the "Date of Entry of Judgment" was listed on the judgment form as "08-24-17 nunc pro tunc for 07/28/2017."

On January 19, 2018, Rhodes filed a pro se notice of appeal, stating that he was filing "[t]his delayed notice" of appeal due to trial counsel's "gross incompetence" in filing the initial notice of appeal in the trial court rather than in the appellate court. In this pro se notice of appeal, Rhodes attached a copy of the initial notice of appeal filed by trial counsel in the trial court.

- 3 -

Thereafter, Rhodes filed a motion to be declared indigent and to receive the appointment of counsel. On April 6, 2018, this court remanded this motion to the trial court. Rhodes was subsequently declared indigent and appointed appellate counsel.

## ANALYSIS

I. **Untimely Filed Notice of Appeal.** Before addressing the sentencing issue, we must consider the State's claim that Rhodes' case should be dismissed because of his untimely notice of appeal. The State specifically asserts that the notice of appeal was not filed within thirty days of entry of his judgments. See Tenn. R. App. 4(a).

Here, the original judgments of conviction for TennCare fraud and sale of Alprazolam were entered on August 1, 2017, and the corrected judgment for the TennCare fraud conviction was entered on September 5, 2017. It is well-established that "an amended or corrected judgment operates upon the existing judgment" and "generally does not restart the time for filing a tolling motion such as a Rule 33 motion for a new trial or, as the case may be, a notice of appeal." State v. Raygan L. Presley, No. M2007-02487-CCA-R3-CD, 2008 WL 3843849, at *3 (Tenn. Crim. App. Aug. 18, 2008). Consequently, Rhodes' January 24, 2018 notice of appeal was filed more than four months late.

However, because the timely filing of a notice of appeal is not a precondition of this court having jurisdiction of the matter, we may waive the requirement of a timely notice of appeal filing "in the interest of justice." Tenn. R. App. P. 4(a). The appellant has the burden of establishing that a waiver of the timely filing requirement is appropriate. State v. Kevin Montrell Thompson, E2016-01565-CCA-R3-CD, 2017 WL 262701, at *2 (Tenn. Crim. App. Jan. 20, 2017). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). We recognize that "[i]f this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." Id. (citing Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996)).

"'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" Id. (quoting State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). "Rule 4 does not relieve pro se [defendants] from the [thirty-day] notice requirement." Kevin Montrell Thompson, 2017 WL 262701, at *3 (alterations in original) (citing Michelle Pierre Hill, 1996 WL 63950, at *1). Instead, a

- 4 -

"[d]efendant's pro se status is but one factor in deciding whether the interest of justice mandates waiver of the thirty-day notice requirement." Id. (citing Michelle Pierre Hill, 1996 WL 63950, at *1).

The State, while acknowledging that Rhodes blamed trial counsel for filing a notice of appeal in the trial court rather than the appellate court, argues that Rhodes failed to address the untimeliness of his appeal in his brief and failed to ask this court to waive timely filing of his notice of appeal. The State also asserts that Rhodes was appointed new counsel for the appeal, who should have requested that this court waive the timely filing requirement in the interest of justice. The State urges this court to weigh Rhodes' "subsequent silence or inaction . . . against him" in determining whether to waive the timely filing requirement.

We recognize that Rhodes filed his notice of appeal more than four months late. We also recognize that Rhodes has not specifically asked this court to waive the requirement of a timely notice of appeal. See Rockwell, 280 S.W.3d at 214 ("We take this opportunity to encourage litigants that the more proper and efficient practice for a party seeking a waiver of the timeliness of the notice of appeal is to file a motion with this court requesting the waiver pursuant Tennessee Rule of Appellate Procedure 4(a)."). However, Rhodes did attempt to explain his untimely notice of appeal by asserting that he was filing "[t]his delayed notice" of appeal due to trial counsel's "gross incompetence" in filing the initial notice of appeal in the trial court rather than in the appellate court. We recognize that trial counsel never filed a timely notice of appeal in this court, though directed by the trial court clerk to do so, and that appointed appellate counsel never requested that this court waive the timely filing requirement. Nevertheless, given the particular circumstances in this case, we conclude that the "interest of justice" is best served by granting a waiver. See Tenn. R. App. P. 4(a); see also State v. Hatcher, 310 S.W.3d 788, 804 (Tenn. 2010); Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998).

**II. Sentencing.** Rhodes argues that his effective twenty-year sentence is excessive in light of the proof he presented at the sentencing hearing. He claims the trial court did not fully consider his mitigating factors and should have given more consideration to the mitigating factors than the applicable enhancement factors. He also asserts that because he is "doing well," "has received help," and "has continued to improve," he should receive relief from his sentence. The State responds that Rhodes' challenge to the court's weighing of the enhancement and mitigating factors does not entitle him to relief, see State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008), and that Rhodes' sentence is consistent with the purposes and principles of the sentencing act. We agree with the State and conclude that the trial court properly exercised its discretion in sentencing Rhodes to an effective twenty-year sentence in confinement.

- 5 -

At the sentencing hearing, Julie Raines, a court specialist for the Tennessee Department of Correction, testified that she completed Rhodes' presentence investigation report, which was entered into evidence. Raines said Rhodes' criminal history included six prior felonies, including possession of less than a half a gram of a Schedule II drug, possession of a Schedule II drug in a drug free zone, possession of a weapon by a convicted felon, aggravated assault, possession of a weapon with intent to go armed, and conspiracy to sell cocaine. She also said Rhodes had prior misdemeanor convictions for possession of drug paraphernalia, criminal impersonation, and assault.

In addition, Raines stated that while Rhodes was out on bond for the instant crimes, he was charged with possession of Alprazolam, driving on a suspended license, driving under the influence (DUI), and possession of Diazepam and Clonazepam. She noted that Rhodes had been on probation for the last five years and had violated probation in 2013, 2014, 2015, had violated his probation twice in 2016, and had a pending violation based an offense he committed in 2016. She also stated that Rhodes was currently on probation for convictions in Davidson County and was currently on supervised probation for convictions in Wilson County.

Raines said that although Rhodes had informed her that he had participated in multiple treatment programs while in custody, including anger management classes and Alcoholics Anonymous, she was unable to verify his participation in these programs because Rhodes failed to supply the proper documentation. Raines acknowledged that Rhodes had sought mental health treatment but noted that he had been found competent to stand trial. She stated that Rhodes had sought Social Security Disability benefits because of his mental health issues and that his disability case was still pending. She determined that Rhodes had a "high risk" of reoffending based upon his risk assessment.

Rhodes testified in his own behalf at the sentencing hearing. He stated that he was fifty-five years old and had suffered hearing loss during his time in the military. He explained that he had been in the National Guard and the Army Reserves from 1981 until 1987, when he was honorably discharged.

Rhodes said that he had a court date in August for the driving on a suspended license charge and that since obtaining this charge, he had obtained a valid driver's license. He explained that at the time he was stopped for this charge, he did not know that his license had been suspended for nonpayment of child support. He later resolved the child support issue by showing that he had applied for disability benefits.

Rhodes stated that had been trying to obtain Social Security Disability benefits for the last two years and had finally received a disability hearing that was scheduled for the

following month. When Rhodes learned of this hearing date, he informed the Social Security Administration that he had a pending criminal case. Rhodes then asked the trial court for an alternative sentence. When trial counsel asked him why the court would believe, based on his criminal history, that he would be successful with an alternative sentence, Rhodes replied:

> I'm going to answer this question as honest as I can. Because God can change anybody, and my pastor, if you still have that note he wrote, they observed me for a year. It changed my life. I don't drink no more. Back then I was still relapsing and I wasn't going to these places like mental health that got me on the right medications now. And when I didn't have my medication I would relapse or something like that, you know. But today I have a lot of reasons.

> My mother is setting back there. I live with her. She's got [A]l[zheimer's] and she also has [diabetes], and I have to be there for her and help her. And also my wife don't have no income and the reason why she can't [work is] because she's [pregnant].

> . . . .

> She's getting ready to have [the baby] in three months, but the doctor told her she can't work cause she's high risk. . . .So I have a lot of reasons today. I pay child support too and I have a little four[-]year[-]old daughter and she'll be hungry, and she don't—my [ex-]wife don't have an income either. But I would just say because God changed my life around.

> . . . I'm not the same person I used to be. My church members can tell you that. I wish I had that letter that I thought I gave it to you. Brother Glenn sent a letter telling how much I had changed. For a year I have been going to church. I hadn't been going to church all these other years. I didn't know God, so I know Him now, and whatever happens, I put [it] in God's hands.

Rhodes stated that while his disability case was pending, he had been allowed to work and was currently employed at a staffing company. He said that he and his wife were living with his mother to help take care of her and that if the court granted him an alternative sentence, they would continue to live with his mother. Rhodes acknowledged that he had ten children with another child on the way. He also acknowledged that he was not currently responsible for child support because he had applied for disability benefits, which could be granted or denied.

Regarding his pending DUI case, Rhodes asserted that the test results showed that he had no alcohol in his blood at the time of this offense. He asserted that he had not consumed alcohol in the last year. He also stated that although he was charged with possession of Alprazolam, he had been given a prescription for this medication and had been charged with this offense because the pills were not in a prescription bottle at the time he was stopped.

As for the possession of Diazepam and Clonazepam charges, Rhodes stated that he had a prescription for Clonazepam and that he had previously been given a prescription for Diazepam. He said he had the Diazepam in his car at the time of the stop because he was moving his things into a new home.

Rhodes stated that he was admitted to Middle Tennessee Mental Health in 2015 because he tried to commit suicide because of his alcohol use. He also went to the University Medical Center in Lebanon in March 2015, shortly after being released in this case, because he was depressed and suicidal. In December 2015, Rhodes was admitted to the Skyline Madison Campus for two weeks for detoxification from alcohol and then he completed three weeks of intensive outpatient treatment. In October 2015, he was admitted to the Rolling Hills Hospital for two weeks of rehabilitation for his addiction problems. He also received treatment from Centerstone for the last four years. Rhodes said he had received treatment for his addiction problems at Elam Mental Health in 2001 and had lived in a halfway house for several years starting in 2003.

Rhodes asserted that he joined a church one year earlier when he married his wife. He stated that his church "changed his life." He added, "It took God to turn me around but . . . I know I made bad choices back then when I was drinking and doing all of that stuff, but last year my church has been behind me. I mean, you know, [I] just ain't the same person no more."

Rhodes acknowledged that he had been charged with violating his probation in Davidson County, which was waiting for his charges in this case to be resolved before holding a hearing to determine whether he violated his probation there. He maintained that he had been reporting to his probation officer every month and that he had never failed a drug test while on probation.

Rhodes said that he had paid for the four Alprazolam pills that he sold, which were the basis for the TennCare fraud conviction in this case. However, he admitted that he used his TennCare benefits when he went to the doctor and obtained the Alprazolam prescription.

- 8 -

At the end of this hearing, the trial court said that when determining the appropriate sentence in this case, it had considered the proof at the sentencing hearing, the presentence report, the principles of sentencing, the arguments as to sentencing alternatives, the nature and characteristics of the conduct involved, the evidence and argument regarding the enhancement and mitigating factors, and the statistical information provided by the Administrative Office of the Courts for those similarly situated to Rhodes. The court then determined that Rhodes was a Range III, persistent offender and that the sentencing range for each of his two Class D felony convictions was eight to twelve years. See Tenn. Code Ann. §§ 40-35-107(a), -112(c)(4).

The court reviewed the enumerated mitigating factors and found that none of these factors applied in this case. See id. § 40-35-113. However, it applied several enhancement factors. First, the court found that Rhodes had a "previous history of criminal convictions or criminal behavior in addition to that which is required for the appropriate range." See id. § 40-35-114(1). It recognized that Rhodes' criminal history included six felony convictions as well as misdemeanor convictions for criminal impersonation and assault. It also noted that Rhodes had pending charges in two different counties for driving on a suspended license, DUI, and two charges for casual exchange of a Schedule IV drug, which had all occurred while Rhodes was out on bond in this case. In addition, the court observed that Rhodes had a pending violation of probation case in Davidson County. Consequently, the court "place[d] a heavy amount of weight" on enhancement factor (1). The trial court also found that Rhodes, before trial or sentencing, had "failed to comply with the conditions of a sentence involving release." See id. § 40-35-114(8). It asserted that Rhodes had seven violations of probation or parole and at least one violation in each of the last five years, which was a "phenomenal record of nonconformance." It then held that this enhancement factor "certainly applied" and that it "applied weight" to that factor. The court also found that at the time Rhodes committed the offenses in this case, he was "released on probation." See id. § 40-35-114(13)(C). The court stated that it was putting "particular weight" on these three factors. Lastly, the court found that Rhodes "had no hesitation about committing a crime when the risk to human life was high" but only gave this enhancement factor "some weight." See id. § 40-35-114(10).

The trial court noted that the only thing Rhodes had "been consistent about [wa]s [his] inability to follow the conditions of probation." It stated that it was "not impressed with Mr. Rhodes demeanor" and did not "believe him to be a dependable person" who could "follow any terms of probation[.]" Regarding Rhodes' depression and suicide attempts, the court said, "I can certainly sympathize with Mr. Rhodes if he's having these problems. I do believe some of this was intentionally brought on by himself based on the substance [abuse]."

- 9 -

When determining the length of Rhodes' sentence, the court stated that it was "going to have to lean toward the high side" based on the evidence presented at the sentencing hearing. It recognized that Rhodes had already served four-and-a-half years for two felony convictions and a year-and-a-half for another felony conviction. After determining that "the middle of the range [wa]s more than fair," the court sentenced Rhodes to ten years on each conviction. The court concluded that the ten-year sentences were "the le[ast] severe measure necessary" to achieve the purposes and principles of the sentencing act.

The court next considered whether Rhodes should receive an alternative sentence. First, the court found that confinement was necessary because Rhodes "ha[d] a long history of criminal conduct," which consisted of six felony convictions and three misdemeanor convictions. See id. § 40-35-103(1)(A). It also found that "[c]onfinement [wa]s necessary to avoid depreciating the seriousness of the offense" and "[wa]s particularly suited to provide an effective deterrence to others." See id. § 40-35-103(1)(B). The court said that "to see someone take . . . Tenn[C]are coverage provided by the State and use it to your own personal benefit is disappointing to the Court" and noted that such "behavior should be deterred to prevent others from doing this in the future." In addition, the court found that "measures less restrictive than confinement ha[d] frequently or recently been applied unsuccessfully" to Rhodes in light of his "remarkable seven prior violations of probation . . . within the last five years." See id. § 40-35-103(1)(C). The court concluded that "incarceration [wa]s necessary in light of Rhodes' "extensive, extensive behavior."

As to whether Rhodes' sentences would be served concurrently or consecutively, the court recognized that Rhodes had "twenty-seven years of criminal conduct." As a result, the court found that Rhodes was a "professional criminal" who had knowingly devoted his life to criminal acts as a major source of livelihood and that his "criminal activity was extensive." See id. § 40-35-115(b)(1), (2). The court also found that Rhodes committed the offenses in this case "while on probation." See id. § 40-35-115(b)(6). In determining whether these sentences should be served consecutively rather than concurrently, the court also addressed Rhodes' recent progress:

> I'm glad to hear that you say you've turned a corner and found the Lord. That's good for anybody. I've certainly not passed any judgment on that, but the problem is, when you do this behavior, these convictions stack up and they stack up and they stack up and you get to the point where you have six prior felonies, three of which are drug sales, one of which is an aggravated assault, and two weapons charges, Mr. Rhodes.

- 10 -

There's got to be a day when you've got to pay the piper, and it's not through the inability of your lawyer. I think your lawyer argued very effectively for you. He put forth the best case he had, but I think based on the law I should, and will, order these sentences to run consecutive[ly], sir.

Ultimately, the court sentenced Rhodes as a Range III, persistent offender to two consecutive ten-year sentences in confinement. The court also recommended that Rhodes be placed in the DeBerry Special Needs facility at the penitentiary in light of his history of suicide attempts.

We reiterate that this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A trial court abuses its discretion only when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. State v. Herron, 461 S.W.3d 890, 904 (Tenn. 2015). The 2005 amendments to the sentencing act "served to increase the discretionary authority of trial courts in sentencing." Bise, 380 S.W.3d at 708. In particular, these amendments "rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by—but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." Id. at 706. In light of this broader discretion,

a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id. Significantly, "the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 344.

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b). In addition, the trial court must consider "the record of prior felony convictions filed by the district attorney general with the court, as required by § 40-35-202(a)." Id. § 40-35-210(f).

The trial court shall impose "a sentence justly deserved in relation to the seriousness of the offense[.]" Id. § 40-35-102(1). The court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102(5),-103(b)(9). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Id. §§ 40-35-103(2), (4). The defendant bears the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Cmts.

In challenging his sentences, Rhodes essentially argues that the trial court gave insufficient weight to his mitigating factors and too much weight to the enhancement factors. He also asserts that the trial court should have given him a more lenient sentence because he is doing well and has continued to improve. We reiterate that a trial court's improper weighing of enhancement and mitigating factors is no longer a ground for appeal. See Carter, 254 S.W.3d at 344. As we noted, the trial court is guided by, but not bound by, any applicable enhancement or mitigating factors when imposing a sentence, and we will not disturb a trial court's sentence unless the court wholly departed from the purposes and principles of the Sentencing Act. See Bise, 380 S.W.3d at 706. The transcript from the sentencing hearing shows that the trial court considered Rhodes' progress but ultimately concluded that his extensive criminal history, including six prior felonies, outweighed any recent progress he had made.

After reviewing the record, we conclude that the trial court did not abuse its discretion in sentencing Rhodes to two consecutive ten-year sentences in confinement. The record fully supports the trial court's imposition of within-range, ten-year sentences

for each conviction. The court properly found that confinement was proper in light of Rhodes' criminal history, the need to provide deterrence to others, and Rhodes' repeated failed attempts at alternative sentencing. It also properly found that consecutive sentencing was appropriate because Rhodes was a professional criminal with an extensive criminal record who had committed the instant offenses while on probation. The record clearly establishes that the trial court properly considered the purposes and principles of sentencing. Therefore, we conclude that the trial court properly exercised its discretion in sentencing Rhodes to an effective twenty-year sentence in confinement.

As a final note, we recognize some clerical errors in the judgment forms in this case that need to be corrected. The judgment form for Count 1 of case number 15-CR-1060 shows that Count 2 of case number 15-CR-1060 was dismissed pursuant to Rhodes' guilty plea. However, both the plea agreement and the transcript from the plea submission hearing reflect that Count 2 and Count 3 of case number 15-CR-1060 were to be dismissed as a condition of Rhodes' plea to Count 1 of case number 15-CR-1060. Accordingly, we affirm the judgment of the trial court but remand the case to the trial court for entry of a corrected judgment in Count 1 of case number 15-CR-1060 reflecting that Counts 2 and 3 are dismissed. Moreover, because the record indicates that separate judgment forms were not entered for any of the dismissed counts, we also remand the case for entry of separate judgment forms in Counts 2 and 3 of case number 15-CR-1060 and in Counts 2 and 3 of 15-CR-1061, reflecting that all of these counts have been dismissed. See Tenn. R. Crim. P. 32(e)(3) ("If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall enter judgment accordingly."); State v. Berry, 503 S.W.3d 360, 364 (Tenn. 2015) (order) ("For charges resulting in a not guilty verdict or a dismissal, the trial court should "enter judgment accordingly" as to the respective count.").

## CONCLUSION

Based on the aforementioned authorities and reasoning, the judgment of the trial court is affirmed but the case is remanded for entry of corrected judgment forms as specified in this opinion.

_____
CAMILLE R. MCMULLEN, JUDGE

- 13 -