IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 15, 2020

## VERNELL LYNN CARPENTER LEWIS v. WILLIAM BILLY LEWIS

**Appeal from the Circuit Court for Shelby County**
**No. CT-000021-17  Valerie L Smith, Judge**

_____

### No. W2019-00542-COA-R3-CV

_____

The sole issue in this appeal concerns the trial court's decision to classify residential property as the wife's separate asset. The trial court made its decision upon finding the wife purchased the property prior to the marriage, titled it in her name only, and paid the mortgage and expenses to maintain the property with money she earned during the marriage and with only occasional assistance from the husband. This appeal followed. The husband contends the property should have been classified as a marital asset because the couple resided there as husband and wife for ten years; the money the wife earned during the marriage was marital property; and he made substantial contributions to maintaining the property and paying expenses. We have determined that the funds the wife used to pay the mortgage and expenses were marital assets because they were earned during the marriage. Moreover, the couple used the property as their marital residence during their ten-year marriage, and the husband provided some, albeit modest, assistance in maintaining the property. Accordingly, we reverse the decision of the trial court and hold that the property shall be classified as a marital asset. Based on this decision, we vacate the division of the marital estate and remand for the trial court to determine the value of the marital assets, equitably divide those assets, and enter judgment accordingly. The husband also contends the trial court's discovery sanction against the wife was insufficient. Finding no error with this discretionary decision, we affirm the sanction imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in part; Reversed in part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Jimmie D. Drewry, Memphis, Tennessee, for the appellant, William Billy Lewis.

Vicki L. Green, Millington, Tennessee, for the appellee, Vernell Lynn Carpenter Lewis.

# OPINION

## FACTS AND PROCEDURAL HISTORY

### I. BACKGROUND

William Billy Lewis ("Husband") and Vernell Lynn Carpenter Lewis ("Wife") began dating in 1995. Each had children from a previous marriage and maintained separate residences. Ten years later, while the couple was still dating, Wife purchased a four-acre parcel of land on Hines Road in Millington, Tennessee ("the Property"). The Property included a single-family residence and a detached garage. Wife made the down payment with her separate funds and placed the title in her name.

Wife moved into the residence shortly after the purchase. Within a year, Husband moved in with her. They built stalls for Husband's horses, and Wife paid to have a shed built on the property. A few months later, Husband moved out when Wife refused to allow his grown son to live with them. Husband lived nearby in his motorhome for three or four months, after which the couple reconciled, and Husband moved back to the property.

After Husband returned, Wife prepared a handwritten document ("the Agreement"), which provided, in its entirety, as follows:

> By this agreement made and entered into on August 17, 2006 between Vernell C. Davis and William Lewis, co-habitants on the premises situated at (7890 Hines Rd. Millington, Tenn. 38053) together with all the privileges and rights equally divided for an indefinite term of years to commence on Aug 17, 2006.
>
> Both parties agree to pay without demand 1/2 each of the monthly mortgage payments, utilities and upkeep of the premises, with all decision making and rights pertaining to the property equally divided.

The couple signed the Agreement, and their signatures were notarized.

Eight months later, the couple was married. One month after getting married, Husband quit his job as an automobile mechanic and stopped paying his share of the expenses. During the remainder of the marriage, Wife paid the mortgage with her earnings.

### II. DIVORCE PROCEEDINGS

In 2017, after ten years of marriage, both Husband and Wife filed complaints for divorce, each alleging irreconcilable differences and inappropriate marital conduct. In May 2018, the trial court entered a scheduling order, and the parties proceeded with discovery.

During Wife's deposition in September 2018, a dispute arose, at which time Husband's attorney cut the deposition short and filed a motion for sanctions including expenses related to the deposition. The trial court granted the motion but reserved ruling on the amount of the sanction. Husband's counsel later submitted an invoice for court reporting services, "representing the cost incurred related to the Motion for Sanctions."

The court held a trial over three days in October and November 2018. After the trial began, the parties stipulated to the grounds for divorce and the division of personal property. The only remaining issue was the classification, value, and division of the Property.

In her testimony, Wife insisted that she never intended for the Property to be a marital asset. She explained that she asked Husband to sign the Agreement in August 2006 because Husband had been using the garage as a workshop and kept his horses on the property without contributing to expenses. Wife presented numerous receipts, showing she paid for home improvement materials and services during the marriage. She also testified that Husband told her she should pay the bills because it was her house. Although Wife conceded that Husband performed some maintenance tasks on the property, she insisted that she did most of the upkeep.

For his part, Husband testified that Wife always intended for him to be a co-owner, but she left him off the title and financing because of his credit. He also asserted that he asked for the Agreement in August 2006. He explained that he wanted to memorialize his equal rights after Wife refused to allow his son to live with them. But Husband acknowledged that Wife told him the property was hers on several occasions, both before and after they signed the Agreement. As for payment of the expenses, Husband admitted he did not always contribute as much as Wife, but he asserted that he gave Wife half of everything he earned. Further, Husband contended that his contributions took the form of physical labor and insisted that he did most of the upkeep.

In February 2019, the trial court entered a final divorce decree, finding the Property was not a part of the marital estate. As for who contributed what, the court found Wife's testimony more credible than that of Husband. The court concluded that Wife managed and performed the property maintenance with only occasional help from Husband. The court also found that the Agreement did not entitle Husband to an interest in the Property because Husband had not paid his half of the mortgage and utility bills.

In a separate order, the court sanctioned Wife's attorney by awarding Husband $250 for attorneys' fees and $451.80 for costs related to Wife's deposition.

This appeal followed.

Husband raises two issues on appeal: (1) whether the Property was marital property based on transmutation; and (2) whether the trial court's modest Tennessee Rule of Civil Procedure 37 discovery sanction against Wife was an abuse of discretion.

## STANDARD OF REVIEW

"Whether or not transmutation has occurred is a fact question." *Luplow v. Luplow*, 450 S.W.3d 105, 114 (Tenn. Ct. App. 2014) (citing *Fox v. Fox*, No. M2004-01616-COA-R3-CV, 2006 WL 2535407, at *3 (Tenn. Ct. App. Sept. 1, 2006)). Under Tenn. R. App. P. 13(d), we review a trial court's determinations on issues of fact "de novo upon the record." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). We presume the court's findings are correct, "unless the preponderance of the evidence is otherwise." *Id.* "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006) (citations omitted). Further, we will not second guess a trial court's credibility determination absent clear and convincing evidence to the contrary. *Kelly*, 445 S.W.3d at 692.

Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

In contrast, we review a trial court's decisions regarding sanctions under an abuse of discretion standard, *Brooks v. United Uniform Company*, 682 S.W.2d 913, 915 (Tenn. 1984), which does not permit reviewing courts to substitute their discretion for that of the trial court, *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Nevertheless, the abuse of discretion standard of review does not immunize a trial court's decision from any meaningful appellate scrutiny:

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524–25 (internal citations omitted). Stated another way, the appellate court should review a discretionary decision to determine if it was "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015).

ANALYSIS

I. CLASSIFICATION OF HINES ROAD PROPERTY

Husband contends the trial court erred in ruling that the Property did not transmute to become marital property because (1) the Agreement evidences Wife's intent for the Property to be jointly owned with Husband, (2) the Property was the marital residence, (3) Wife admitted that Husband maintained the Property, and (4) Wife used marital funds to pay the mortgage and for improvements to the Property.

"The classification of particular property as either separate or marital is a question of fact to be determined in light of all relevant circumstances." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009). Moreover, "the trial court is to consider both the legal and equitable interests of the parties in deciding whether the property is separate or marital." *Wallace v. Wallace*, No. C.A. 23, 1989 WL 31627, at *3 (Tenn. Ct. App. Apr. 7, 1989) (citing *Jones v. Jones*, 597 S.W.2d 886 (Tenn. 1979)).

The parties created confusion in the trial court by asserting claims and defenses based on the doctrine of transmutation and the statutory definition of marital property under Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) without distinguishing them. In its final ruling, the trial court cited only the doctrine of transmutation; however, some of its findings identify factors that are only applicable to a claim based on Tenn. Code Ann. § 36-4-121(b)(1)(B)(i). Because the doctrine of transmutation and the definition of marital property under Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) are distinct in their purpose and requirements, we find it necessary to distinguish the two as we determine whether the trial court correctly determined that the Property did not transmute into marital property.[1]

"Common-law" transmutation is "founded upon principles of acquisition by gift [and] transforms the separate asset into a marital asset in its entirety," *Galligan v. Galligan*, No. M2006-00833-COA-R3-CV, 2007 WL 2295999, at *6 n.5 (Tenn. Ct. App. Aug. 10, 2007), while Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) classifies only the "increase in the value" of a separate asset during the marriage as marital property "if each party substantially contributed to its preservation and appreciation." Stated another way, under the common-law doctrine of transmutation, **"[a]n asset separately owned by one spouse will be classified as marital property if the parties themselves treated it as marital property**." *Trezevant v. Trezevant*, 568 S.W.3d 595, 610 (Tenn. Ct. App. 2018) (emphasis added) (quoting *Fox*, 2006 WL 2535407, at *5). By contrast, under the statutory definition

---

[1] We find it implicit in the trial court's final order that Husband failed to prove that the Property increased in value during the marriage due to his contributions; thus, Husband was not entitled to relief pursuant to Tenn. Code Ann. § 36-4-121. Moreover, Husband did not raise the issue of whether he was entitled to relief pursuant to Tenn. Code Ann. § 36-4-121. Therefore, our analysis is limited to the doctrine of transmutation.

of marital property, **the increase in value** during the marriage of a separate asset will be classified as marital property if **the nonowner spouse contributed substantially** to the asset's preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B)(i). Thus, under the doctrine of transmutation, **the entire asset** may become marital property when the parties **treated it as marital property,** while under the statutory definition, **only the increase in value resulting from the nonowner's substantial contributions** becomes marital property.

In its final order, citing to *Hayes v. Hayes*, No. W2010-02015-COA-R3-CV, 2012 WL 4936282 (Tenn. Ct. App. Oct. 18, 2012), the trial court correctly recognized four factors that are persuasive in the transmutation analysis:

> The Court looks to Hayes v. Hayes, 2012 WL 4936282 *12 for factors to be considered in determining whether or not the property which was purchased by [Wife] prior to the marriage has been transmuted. Those factors include:
>
> 1. The use of the property as a marital residence,
>
> 2. The ongoing maintenance of the property by both parties,
>
> 3. Placing the title to the property in joint ownership, and
>
> 4. Using the credit of the non-owner spouse to improve the property.

The court found the title was not placed in joint ownership, Husband's credit was not used to improve the property, and the property was used as a marital residence. None of these findings are contested on appeal. However, the trial court based its finding that no transmutation occurred largely on a comparison of Husband and Wife's physical and financial contributions to the Property's maintenance and upkeep, which are statutory factors, not transmutation factors[2]:

> The Court heard disputed testimony regarding the maintenance of the property. While both parties agreed that [Husband] cut grass, the Court finds the testimony of [Wife] to be more credible in this regard and finds that she was the party engaging in maintenance for the most part with only occasional help from [Husband]. The court finds that [Wife] was the party managing the property. . . . The testimony is undisputed that [Wife] made all payments on

---

[2] The court's findings relative to physical and financial contributions to the Property's maintenance and upkeep may be due to the parties' failure to properly distinguish between the common law doctrine of transmutation and the statutory definition of marital property in the context of an increase in value of separate property.

the property. While [Husband] testified that he provided cash to [Wife] regularly, the Court finds that testimony to be less than credible.

The four factors cited by the trial court are not exclusive. *Fox*, 2006 WL 2535407, at *5 (listing the factors as the most commonly used). In particular, Tennessee courts have also found persuasive the use of marital funds for improving the property or paying off an encumbrance. *See, e.g.*, *Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007) (finding husband's interest in real property was marital when he used marital funds to pay the mortgage for 20 years). Significant to this case, a spouse's earnings are marital property, regardless of whether they are deposited into a joint or separate bank account. *See Wade v. Wade*, 897 S.W.2d 702, 716 (Tenn. Ct. App. 1994); *see also Cohen v. Cohen*, 937 S.W.2d 823, 833 (Tenn. 1996); *Wright v. Wright*, No. W2018-02163-COA-R3-CV, 2020 WL 1079266, at *11 (Tenn. Ct. App. Mar. 6, 2020) (expenditure of marital funds "was sufficient to transmute the entirety into marital property"); *Carter v. Browne*, No. W2018-00429-COA-R3-CV, 2019 WL 424201, at *12 (Tenn. Ct. App. Feb. 4, 2019) (mortgage "frequently paid" with marital funds); *Givens v. Givens*, No. E2016-00865-COA-R3-CV, 2017 WL 4339489, at *9 (Tenn. Ct. App. Sept. 29, 2017) (husband spent "significant amounts of marital income on paying off and remodeling [the property]"); *Liner v. Liner*, No. M2010-00582-COA-R3-CV, 2011 WL 1420883, *3 (Tenn. Ct. App. April 13, 2011) (considering the fact that "[t]he mortgage and utilities for the home were paid out of [a] joint account"); *Daniel v. Daniel*, No. M2006-01579-COA-R3-CV, 2007 WL 3202778, at *6 (Tenn. Ct. App. Oct. 31, 2007) (finding transmutation where "[t]he mortgage, insurance, and taxes on the [ ] property were paid with the rental proceeds that had been deposited into a joint bank account held by the parties"); *Davis v. Davis*, No. 03A01-9708-CH-00381, 1999 WL 83948, at *4 (Tenn. Ct. App. Feb. 19, 1999) (affirming marital classification when there was "insufficient proof to substantiate" the husband's claim that he purchased the property with funds given to him by his uncle).

Our assessment of the evidence begins with Wife's testimony that she used pre-marital insurance proceeds to make the down payment for the Property in 2005 and obtained a mortgage for the balance of the purchase price. The next year, Husband moved to the Property and agreed to pay half of the mortgage and expenses. Wife testified that Husband paid half of the mortgage for only six or seven months—at which time the parties got married, and Husband quit his job. With Wife's support, Husband attempted to start a private security business, repairing and equipping two security trucks on the Property. That business failed, and Husband remained "self-employed." Wife testified that Husband subsequently had a lawn service and performed odd jobs but never gave her any money for the mortgage or utilities. She paid for property expenses and improvements for the duration of the marriage out of her separate bank account, which was funded with her earnings.

Wife performed most of the maintenance on the Property, but she acknowledged that Husband performed several tasks, including cutting the grass, clearing fallen trees and branches, chopping firewood, cleaning the septic tank, performing small electrical projects,

- 7 -

and repairing fences. She also testified that she and Husband made a few improvements together, such as installing a new kitchen countertop and hanging drywall in a shed.

Regarding the August 2006 Agreement, we agree with the trial court's conclusion that the Agreement did not convey any interest in the Property to Husband. The Agreement was executed seven months prior to the marriage. Wife testified that it was not executed in contemplation of marriage. Husband testified to the same effect, stating the parties were not engaged until 2007. Thus, the Agreement is of little relevance to how the parties treated the Property during the marriage.

The trial court found that Husband's testimony regarding his contributions to the property was not credible, and we find no reason to second guess this determination. "[B]ecause trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses,'" appellate courts afford them "considerable deference when reviewing issues that hinge on the witnesses' credibility." *Kelly*, 445 S.W.3d at 692 (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). We will not reevaluate a trial court's assessment of a witness's credibility unless there is clear and convincing evidence to the contrary. *Id.* Because there is no clear and convincing evidence to the contrary, we find no reason to second guess this determination regarding Husband's lack of credibility. Nonetheless, Wife's own testimony established facts that preponderate against the finding that the Property did not transmute during the marriage.

As discussed, the transmutation analysis is focused on how the parties treated the property and not their relative efforts. *See Hayes*, 2012 WL 4936282, at *12. Here, it is undisputed that the parties used the Property throughout the marriage as their marital residence. Also persuasive is the use of marital funds for improving property or paying off an encumbrance. *See Owens*, 241 S.W.3d at 486. Admittedly, while Wife assumed more responsibility for the Property than Husband, in addition to performing her role as the primary wage earner, it is undisputed that Wife used marital funds, her earnings during the marriage, to pay the mortgage, property taxes, and expenses to maintain the Property. For these and other reasons apparent from the record, we find that the evidence preponderates against the trial court's finding that the Property did not transmute to marital property and remand with instruction for the Property to be classified as marital property.

Because the Property is to be classified as marital property, we find it necessary to remand this matter to the trial court to fashion an equitable distribution of the marital estate. In ruling that the Property shall be classified as marital property for the purpose of dividing the marital estate, we do not express any opinion as to how the marital estate should be divided. On remand, the trial court will be tasked with equitably dividing the marital estate, considering all the factors in Tenn. Code Ann. § 36-4-121(c), including "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent[.]"

## II. SANCTIONS

Next, we consider whether the amount of monetary sanctions awarded to Husband was consistent with the facts, took account of the applicable law, and was within the range of acceptable alternatives. *See White*, 469 S.W.3d at 527.

Husband contends that the trial court's sanction against Wife's attorney for one hour of attorneys' fees was unreasonable because Husband's attorney spent nine hours researching and drafting due to the misconduct. Husband asserts that he filed two motions for sanctions along with an affidavit of attorney time, but "the trial court refused to allow for more than one (1) hour of attorney time to be granted as an award[,] stating that [preparing the motion for sanctions] would only take one (1) hour."

Tennessee Rule of Civil Procedure 37 contains several provisions that allow courts to issue monetary sanctions when a party has failed to cooperate during discovery. *See, e.g.*, Tenn. R. Civ. P. 37.01(4) (authorizing courts to "require the party or deponent whose conduct necessitated the motion [to compel] or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees"). The record on appeal, however, does not contain a copy of Husband's motion for sanctions, nor does it contain a transcript from the October 2018 hearing or a statement of the evidence.

Moreover, the order granting Husband's motion fails to delineate the basis for its decision. Thus, the record before this court is "devoid of any matter upon which an abuse of discretion can be predicated." *Brooks*, 682 S.W.2d at 915. "[I]n the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 48 (Tenn. Ct. App. 2013) (quoting *Outdoor Management LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007)). Accordingly, we cannot say that the trial court erred by awarding one hour of attorney time as sanctions against Wife's attorney.

### IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT JR., P.J., M.S.