IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 4, 2021 Session

## BOBBY SCOTT SMITH v. BARBARA DIANE (FUSTON) SMITH

**Appeal from the General Sessions Court for Wilson County
No. 2016-DV-45    A. Ensley Hagan, Jr., Judge[1]**

_____

**No. M2019-01834-COA-R3-CV**

_____

A husband and wife sought to end their long-term marriage. After a prolonged trial, the court classified, valued, and equitably divided the marital estate. The court also ordered both parties to pay their own attorney's fees. The wife filed a motion to alter or amend the final decree. Acknowledging errors in the initial decree, the court issued an amended divorce decree. Among other things, the court amended the value of the marital residence. Both parties raise issues on appeal. We find the evidence does not preponderate against the court's classification of the husband's interest in several parcels of real property as marital property. We also conclude that the court did not abuse its discretion in amending the value of the marital residence, dividing the marital estate, or declining to award attorney's fees to the wife. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court
Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Eric J. Burch and Erica R. Marino, Manchester, Tennessee, for the appellant, Bobby Scott Smith.

Melanie R. Bean, Lebanon, Tennessee, for the appellee, Barbara Diane Smith.

---

[1] Judge John T. Gwin conducted the trial and issued the final and the amended divorce decrees. After Judge Gwin retired, Judge Hagan presided over post-trial matters.

# OPINION

## I.

### A.

In 2016, Barbara Diane Smith ("Wife") filed for a divorce from her husband of thirty-one years, Bobby Scott Smith ("Husband"). Husband responded with his own divorce petition.

As trial began, the parties stipulated that Wife was entitled to a divorce based on adultery. The remaining contested issues included the value and division of the marital estate and Wife's request for attorney's fees. The marital estate was comprised mostly of real and personal property. The couple had very little in cash or savings.

Husband and Wife married at nineteen, and their only child arrived shortly thereafter. Neither party had a college degree. For much of the marriage, Wife worked as a receptionist in a medical clinic. Husband was a licensed general contractor and real estate agent. He built and renovated mostly residential properties. He also owned two rental properties and 9.7 acres of undeveloped property with a business partner.

Together, Husband and Wife owned two residential properties: one on Borum Road and one on Beech Log Road. Husband built a family home on both properties. For over twenty years, the family lived on the Borum Road property. In 2004, they purchased land on Beech Log Road. Four years later, they moved into their new home. After the move, the Borum Road property provided the couple with rental income.

During the marriage, Husband purchased three parcels of real property with Rick Tomlinson. Husband described Mr. Tomlinson as a silent partner as his involvement was mostly financial. Husband managed all three properties. Their first purchase was on Cainsville Road. Husband renovated the existing home on the property for use as a rental. He and Mr. Tomlinson also purchased a duplex on Hunter's Point Pike for the same purpose. Their third property, located on New Town Road, was undeveloped. Husband hoped to develop the New Town Road property in the future.

In 2015, Jerry Stroud purchased Mr. Tomlinson's interest in the New Town Road property and paid the outstanding debt on the property. As part of this transaction, Husband transferred his interest in the Hunter's Point Pike property to Mr. Tomlinson.

By the end of trial, Husband and Wife had reached a consensus on the value of most marital assets except for the marital residence on Beech Log Road. They had jointly hired an independent appraiser to value three real properties, including the one on Beech Log

2

Road. Wife relied on the 2017 joint appraisal for her proof of value. While Husband accepted the appraiser's value for the other properties, he contended that the appraised value for the Beech Log Road property was too high.

The independent appraiser determined that the Beech Log Road property was worth at least $510,000 in 2017. Husband complained that the appraiser used the wrong square footage for the home. And he believed the appraiser assigned too high a value to his workshop as it had no power or water.

In Husband's opinion, the Beech Log Road property was worth no more than $471,700. He valued the land at $80,000 and the home at $391,700, based on his homeowner's insurance and his experience in real estate. He pointed out that the 2015 property tax assessment arrived at a similar value—$439,300. But he conceded that the 2016 tax assessment valued the property at $502,600.

Throughout the marriage, Husband and Wife maintained separate bank accounts. Wife's income was undisputed. She brought home approximately $1,700 each month. As a self-employed businessman, Husband's income varied. Yet, he often reported less annual taxable income than Wife.

Wife questioned the reliability of Husband's reported income. Husband's bank deposits exceeded his reported income. And he had a history of making large cash purchases.[2]

Husband initially agreed that the money he deposited came from his business earnings. And he blamed any inaccuracies in his tax returns on his accountant, who was not called as a witness. Later, he claimed that some deposits were loans or advances on future profits.

Throughout the trial, Husband maintained that his income paid for "everything to do with properties, real estate, maintaining rental properties, acquisitions, . . . remodels, . . . any costs to do with any of my assets and property." Wife paid a few household bills. Other than that, he "had no idea where her money went." Not only did he pay for almost everything, he did most of the household chores. As he recalled, he cooked more meals than Wife.

Wife disputed Husband's account. She pointed out that she had been the primary caregiver for their child. And she did her fair share of cooking and cleaning. With her earnings, she also paid a portion of the marital expenses, such as utilities, car payments,

_____

[2] Husband admitted that he paid $16,000 for a Jeep and $5,000 for screen printing equipment in 2014 from available cash.

health insurance, groceries, and the Beech Log Road mortgage. But Wife candidly admitted that she was not involved in Husband's business activities. She did not participate in his real estate purchases or help with the management of the rental properties.

In July 2010, Wife moved out of the marital residence. Although they remained married, Husband and Wife lived separately for the next six years. According to Wife, her move was a last-ditch effort to save the marriage. She had hoped to shock Husband into agreeing to make some changes. Husband disputed Wife's story. He claimed Wife "wanted to stay married and be friends and have the benefits of being married" without the responsibilities.

Even so, Husband agreed that their relationship remained amicable for a year or so. They went out on dates. And Wife deposited funds into Husband's bank account each month throughout the separation. She also maintained Husband's health insurance. Wife explained that her deposits were her contributions to the marital expenses. Husband disagreed. He maintained that the payments were "just a means of her staying tied to me."

B.

After the trial concluded, the court issued a final divorce decree. The court declared the parties divorced and classified and valued their property interests. Each spouse received fifty percent of the marital estate. Husband and Wife remained responsible for their own legal expenses.

Wife swiftly moved to alter or amend. Based on the evidence at trial, she asked the court to amend some of the assigned values. And she claimed that the court's allocation of marital debt required her to pay a portion of Husband's legal expenses. So she asked the court to reconsider her request for attorney's fees.

The court granted Wife's motion. In an amended final decree, the court altered the value of some of the marital assets, including the Beech Log Road property.[3] The court also re-classified Husband's credit card debt as a separate debt.[4] And while the court acknowledged Wife's need for an award of attorney's fees, the court found Husband did not have the ability to pay.

---

[3] In a subsequent order, the court revised its calculation of the "net value" of the Beech Log Road property. But the court did not alter the underlying property value.

[4] After the parties separated, Husband used his credit cards to pay expenses, including his attorney's fees. He admitted that Wife did not benefit from any of the charges he made on his credit cards after 2010.

4

## II.

On appeal, Husband questions the court's classification, valuation, and division of the marital estate.  Wife challenges the trial court's finding that Husband lacks the ability to pay her attorney's fees.  And she seeks an award of attorney's fees on appeal.

Our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d).  We give great deference to the trial court's credibility assessments.  *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009).  We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding."  *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009).  We review questions of law de novo, with no presumption of correctness.  *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

### A. CLASSIFICATION

The court's primary task in this divorce proceeding was the equitable division of the marital estate.  *See* Tenn. Code Ann. § 36-4-121(a)(1) (2017).  Only marital property is subject to division.  *Id.*  So, as an initial step, the court classified each of the parties' property interests as either separate or marital property.  *See Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007).  Classification is a question of fact.  *Id.*

Husband contends that the trial court erred in classifying his interest in the New Town Road, Cainsville Road, and Hunter's Point Pike properties as marital.  All property acquired by either spouse during the marriage is presumed to be marital property.  Tenn. Code Ann. § 36-4-121(b)(1)(A); *Owens*, 241 S.W.3d at 485.  Because Husband purchased these properties during the marriage, they are presumed to be marital property.

The party seeking to rebut this presumption has the "burden of proving by a preponderance of the evidence that the asset is separate property."  *Owens*, 241 S.W.3d at 485-86; *see Trezevant v. Trezevant*, 568 S.W.3d 595, 609 (Tenn. Ct. App. 2018).  The only evidence Husband proffered to rebut the presumption was Wife's admission that she was not directly involved in the purchase or improvement of these properties.  Husband's evidence missed the mark.  *See* Tenn. Code Ann. § 36-4-121(b)(2) (defining separate property).  These three properties were purchased and any improvements were made during the marriage with marital funds.  The evidence does not preponderate against the trial court's finding that these properties were marital property.

## B. VALUATION

The court also assigned a monetary value to each property interest. *See Owens*, 241 S.W.3d at 486. Husband complains that the court erred in amending the value of the Beech Log Road property. "The value of a marital asset is determined by considering all relevant evidence regarding value." *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). Because the "value of marital property is a fact question," we will presume the trial court's valuation is correct unless the evidence preponderates otherwise. *See id.*

A Rule 59.04 motion "provide[s] the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). We review the trial court's decision for an abuse of discretion. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020). A court abuses its discretion when it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Our review of discretionary decisions is limited to determining whether the trial court's decision had the necessary factual support, whether the court identified and applied the correct law, and whether the court's decision was "within the range of acceptable alternative dispositions." *Id.*

Here, the trial court acknowledged that it had "mistakenly relied upon Husband's asset and liability statement as evidence of value[ ]" in its initial decree. Finding that the 2017 joint appraisal of the Beech Log Road property contained "the most credible and reliable evidence of the value," the court amended the property's value accordingly.

Husband complains that the court found the 2017 joint appraisal more credible and reliable than his opinion as the builder and property owner. We will not second guess the trial court's credibility finding on this record. *See Coleman Mgmt., Inc.*, 304 S.W.3d at 348. The 2017 joint appraisal was competent proof of value. None of Husband's asserted deficiencies make the appraisal unreliable. The discrepancy in square footage is minimal and could be attributable to rounding. And the appraiser adjusted for the fact that the workshop was not livable space.

The trial court did not abuse its discretion in amending the valuation for the Beech Log Road property. The court applied the correct law. The court's decision has sufficient factual support. And the amended value is within the range of relevant value evidence presented.

## C. EQUITABLE DIVISION

The trial court has broad discretion to fashion an equitable division of the marital estate. *See* Tenn. Code Ann. § 36-4-121(a)(1); *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). The factors in Tennessee Code Annotated § 36-4-121(c) should guide

the court's decision. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). To reach an equitable division, the trial court must weigh the relevant factors in light of the proof at trial. *Larsen-Ball*, 301 S.W.3d at 234; *Batson*, 769 S.W.2d at 859. We will not disturb the trial court's division "unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence." *Altman v. Altman*, 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005).

Husband contends that he was entitled to a larger percentage of the estate.[5] In Husband's view, his effort and his income created and preserved the marital estate. Wife merely paid a few bills. Wife told a different story. And the court credited her testimony. The court found that Wife fulfilled her role in the marriage and continued her contributions after the separation. Wife's contributions as a homemaker, wage earner, and parent are entitled to equal weight. *See* Tenn. Code Ann. § 36-4-121(c)(5)(A).

Husband also claims his poor health will preclude him from acquiring future capital assets and income. *See id.* § 36-4-121(c)(4). Husband told the court that he was getting older and that the physical demands of his occupation had taken a toll on his body. He submitted medical records showing he needed surgery on both shoulders. These same records indicated that Husband had refused surgery because he was too busy with work. And he admitted that he could still earn a living in his chosen profession. The court questioned Husband's credibility on this issue. We find insufficient evidence in this record to reassess the court's finding. *See Coleman Mgmt., Inc.*, 304 S.W.3d at 348.

"In the final analysis, the appropriateness of the trial court's division depends on its results." *Altman*, 181 S.W.3d at 683. As the trial court noted, this was a long-term marriage. Husband and Wife were married for 32 years. They were similar in age and education. Neither had an appreciable amount of separate property. They both made substantial contributions to this marriage, albeit in different ways. An essentially equal division in a long-term marriage such as this one is appropriate. *See Phelps v. Phelps*, No. M2010-00856-COA-R3-CV, 2011 WL 2535026, at *6 (Tenn. Ct. App. June 24, 2011) (noting the general presumption that a long-term marriage supports an essentially equal division of the marital estate).

### D. ALIMONY IN SOLIDO

Wife contends that the court erred in declining to award her attorney's fees. "It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in

---

[5] Husband relies heavily on the court's factual findings in the original divorce decree. These findings were implicitly replaced in the court's subsequent orders. *See Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) (explaining that in construing court orders, we will give effect "to that which is clearly implied, as well as to that which is expressly stated").

solido." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). So we review the trial court's decision under the deferential abuse of discretion standard. *Id.* As with all alimony awards, the court's decision must be guided by consideration of the relevant statutory factors. *Id.*; *see* Tenn. Code Ann. § 36-5-121(i) (2017). The two most important considerations are need and ability to pay. *Gonsewski*, 350 S.W.3d at 110; *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007).

An award of alimony to pay attorney's fees is only appropriate when one spouse lacks sufficient funds to pay legal expenses or would be forced to deplete available resources to pay them and the other spouse has the ability to pay. *Gonsewski*, 350 S.W.3d at 113. Wife's net monthly income is only $1,751.46. Still, her income and expense statement revealed a small monthly surplus. By the end of trial, her legal fees and expenses exceeded $29,000. Even with her small surplus, she would be forced to use a sizeable amount of the assets she received in the division of the marital estate to pay her own legal expenses.

Despite Wife's proven need, the court found Husband did not have the ability to pay alimony:

> While the Court has great issue with Husband's failure to answer discovery and the need to bring in prior counsel to defend his own efforts in this matter; and while the Court does find Husband's credibility to be poor in regard to his health, his income, his blaming of prior counsel for his failure to answer discovery and other matters, the [Court] specifically finds the above and makes these additional findings of fact as part of its ruling. Nonetheless, allocation of attorney fees falls within the scope of alimony; and, despite the increased fees that Husband caused Wife to incur, this Court cannot find that Husband has an ability to pay alimony, including payment of attorney fees.

We cannot say that the court abused its discretion in failing to award alimony in solido on this basis. True, Husband has historically earned a substantial income. The monthly income shown on Husband's income and expense statement was twice that of Wife. With his skills and experience, Husband also has the higher earning capacity. And his dilatory tactics forced Wife to incur unnecessary legal expenses. Yet, his income and expense statement showed a monthly deficit. He remains liable for all the marital debt and a significant amount of separate debt. He is also required to pay Wife $120,727.74 to equalize the division. In light of Husband's substantial debt burden, we cannot say that the evidence preponderates against the trial court's finding that Husband lacks the ability to pay Wife's attorney's fees.

E.  ATTORNEY'S FEES ON APPEAL

Wife requests an award of attorney's fees on appeal based on the alimony statute. *See* Tenn. Code Ann. § 36-5-103(c) (2017).[6]  This statute gives us the discretion to award a plaintiff spouse reasonable attorney's fees incurred "in enforcing any decree for alimony and/or child support." *Id.*; *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). The trial court did not award alimony.  And child support was not an issue.  So we decline to award Wife attorney's fees based on this statute.

As an additional ground for an award of attorney's fees, Wife claims that Husband's appeal was frivolous.  *See* Tenn. Code Ann. § 27-1-122 (2017).  A frivolous appeal is one "utterly devoid of merit," *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or "taken solely for delay." *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).  We do not find this appeal devoid of merit or perceive that it was taken solely for delay.  Thus, we also decline to award attorney's fees on this basis.

### III.

The evidence does not preponderate against the trial court's classification of the parties' real property interests.  And the court did not abuse its discretion in amending the value of the marital residence, equitably dividing the marital estate, or refusing Wife's request for attorney's fees.  So we affirm.

           s/ W. Neal McBrayer
           W. NEAL MCBRAYER, JUDGE

---

[6] We apply the version of the statute in effect when this divorce action was filed.  *See Sexton v. Carden*, No. E2019-01057-COA-R3-CV, 2020 WL 7240297, at *3 (Tenn. Ct. App. Dec. 9, 2020).